729 So.2d 620 (1999)
Nelson Nadine WILLIAMS, Plaintiff-Appellant,
v.
JACKSON PARISH HOSPITAL, et al., Defendants-Appellees.
Nos. 31,492-CA, 31,551-CW and 31,552-CW.
Court of Appeal of Louisiana, Second Circuit.
January 13, 1999.
Nelson, Hammons & Self by John L. Hammons, Shreveport, Counsel for Appellant.
Watson, Blanche, Wilson & Posner by P. Chauvin Wilkinson, Jr., Baton Rouge, Counsel for Appellee Jackson Parish Hospital.
Cook, Yancey, King & Galloway by Cynthia C. Anderson, Shreveport, Counsel for Appellee Lifeshare Blood Centers.
Mayer, Smith & Roberts by Steven E. Soileau, Shreveport, Counsel for Appellee Stewart Regional Blood Center.
Before BROWN, STEWART and GASKINS, JJ.
*621 STEWART, J.
This medical malpractice case comes before this court on the one and three years issues of prescription, Second Judicial District Court, Jackson Parish, the Honorable Jenifer Ward Clason, presiding. The plaintiff filed suit alleging that she contracted Hepatitis C in 1980 when she was given a blood transfusion during childbirth. The trial court initially found that the plaintiff filed her claim within one year of the date of discovery but that the three-year period in LA-R.S. 9:5628 applied in favor of all defendants and dismissed the plaintiffs claims. Pursuant to the plaintiffs motion for new trial, the trial court found that the blood centers were not included in the medical malpractice law in 1981, and reversed its earlier ruling, finding that the plaintiffs claim had not prescribed against the blood center under either the one year or three year prescriptive periods. The trial court sustained Jackson Parish Hospital's peremptory exception on the three-year prescriptive period. We amend, affirm and remand.

FACTS
On May 29, 1980, the plaintiff, Nelson Nadine Williams, was hospitalized at the Jackson Parish Hospital where she received five units of blood during child birth. On February 20, 1995, the plaintiff was evaluated by Dr. Ana Pere', a family practice physician, for fatigue and dry skin. Dr. Pere' ordered various routine laboratory tests which included screening for Hepatitis C. On March 9, 1995, Dr. Pere' wrote the plaintiff informing her that additional testing was necessary to confirm the abnormal tests. After additional testing, Dr. Pere wrote a letter on March 22, 1995 informing the plaintiff that the new blood tests were normal and that there was a need to repeat the liver enzymes in three months and the other blood tests (ANA) in six months.
On February 16, 1996, the plaintiff underwent additional tests which were positive for the Hepatitis C antibody. On February 20, 1996, Dr. Pere' referred the plaintiff to LSUMC for additional testing. The testing was completed on March 29, 1996 and Dr. Charles Gholson, Chief of LSUMC Gastroenterology Clinic, conducted further assessment on the plaintiff on May 10, 1996. Then on July 19, 1996, the plaintiff was evaluated by Dr. David Dies. Board certified in gastroenterology and hepatology, Dr. Dies explained to the plaintiff the methodology for diagnosing Hepatitis C and informed the plaintiff of the results of both the ELISA, the Polymerase Chain Reaction (PCR) and her liver biopsy.
The plaintiff commenced action against the defendants, Jackson Parish Hospital and Lifeshare Blood Centers, by filing a claim with the Patient' Compensation Fund (PCF) in April 17, 1997. The PCF notified the plaintiff that Jackson Parish Hospital was a qualified health care provider but that Lifeshare Blood Center was not qualified and that the plaintiff had until June 30, 1997 to file suit against the blood provider.
On June 27, 1997, the plaintiff filed suit against the blood provider, Lifeshare Blood Centers, and Jackson Parish Hospital alleging that she contracted Hepatitis C in 1981 when she was given a blood transfusion during childbirth. W.E. & Lela I. Stewart Blood Center d/b/a Stewart Regional Blood Center was included as a defendant by the third party demand filed by Lifeshare Blood Centers on September 17, 1997. The Attorney General was included in the action because the plaintiff attacked the constitutionality of the three-year prescriptive period of LSA-R.S. 9:5628.
Exceptions of Prescription were filed by all the defendants. The matter was heard in February 1998 by the Second Judicial District Court, Jackson Parish, the Honorable Jenifer Ward Clason, presiding.
The trial judge concluded that the plaintiff filed her claim within one year of the date of discovery of her cause of action and thereby overruled the exception based upon the one-year rule. However, the trial judge concluded that the plaintiffs claim was prescribed pursuant to the three-year rule of La. R.S. 9:5628.
On March 5, 1998, the plaintiff filed a Motion for New Trial/Reconsideration as to the trial court's ruling in favor of Lifeshare Blood Centers and Stewart Regional Blood *622 Center on the three-year prescription issue. The trial court reversed its earlier ruling, holding that LA-R.S. 9:5628 did not apply to the two defendants, Lifeshare Blood Centers and Stewart Regional Blood Center, and that the plaintiff's claims against these defendants had not prescribed under either the one year or three year periods. The trial court further found that because Dr. Pere's written communications to the plaintiff on March 22, 1995 indicated normal blood tests, the plaintiff did not have notice of Hepatitis C in March 1995.
In regards to Jackson Parish Hospital, the court reasoned that the statute does not allow for the situation faced by the plaintiff, and that "there was absolutely no way for Ms. Williams to comply with the three-year prescriptive period of LSA-R.S. 9:5628 ... because:
- the disease of Hepatitis C was not specifically identified until 1989, nine years later;
- the disease identifying test (PCR) was not developed until 1993 or 1994, thirteen to fourteen years later;
- the disease itself takes thirteen to fourteen years to develop symptoms from the date of infection and up to twenty years to develop into the disease of Hepatitis C cirrhosis of the liver."
Nevertheless, the trial court concluded that the statute fixes the prescriptive period of three years from the date of action, omission or neglect in patient care that caused the plaintiffs injuries and that the plaintiff filed her action three years after the date of action. On the basis of the prescriptive period fixed in LSA-R.S. 9:5628, the trial court found that the plaintiffs claim was prescribed and sustained Jackson Parish Hospital's exception of prescription.
On April 9, 1998, a Motion for Devolutive Appeal was filed against the judgment rendered in favor of Jackson Parish Hospital. Applications for Supervisory Writs were submitted to this court by Lifeshare Blood Centers and Stewart Blood Centers. On July 16, 1998, this court granted the writ applications, converted the appeal and the answer to the appeal to a writ application, and consolidated the various applications.

ONE AND THREE-YEARS PRESCRIPTION
A court of appeal may not set aside a trial court's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La. 1989). Thus, to reverse a trial court the appellate court must find from the record that a reasonable factual basis does not exist for the finding, and further that the finding is clearly wrong. Smith v. State, Dept. of Health and Hospitals, 26,280 (La.App. 2 Cir. 12/9/94), 647 So.2d 653, 659, writ granted, 650 So.2d 1167, 95-0038 (La.3/10/95), set aside, 676 So.2d 543, 95-0038 (La.6/25/96), rehearing denied; Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Of course, the manifest error standard of appellate review applies even when the evidence before the trier of fact consists solely of written reports, records and depositions. Freeman v. Rew, 557 So.2d 748, 751 (La.App. 2 Cir.1990); Virgil v. American Guar. & Liab. Ins. Co., 507 So.2d 825 (La.1987).
In this assignment of error, the plaintiff urges that the trial court erred in not applying the proper liberative prescriptive period of LSA-C.C. Art. 3492, one year from the date of discovery. This assertion is based upon the Louisiana Malpractice Act, LSA-R.S.9:2797, originally effective in 1976. Prior to 1982, blood providers were subject to a standard of strict liability for tainted blood until the statute was amended, changing the standard from strict liability to negligence. Therefore, LSA-C.C. Art. 3492 applies to actions against blood providers occurring before 1982.
In excepting to the plaintiffs claim on the basis of prescription, all of the defendants counter that the applicable periods are contained in LSA-R.S. 9:5628, one year from the date of discovery and three years from the date of the action asserted to be the cause of the damage.
In the case sub judice, as it relates to Jackson Parish Hospital, we follow the holding in Walker v. Bossier Medical Center, 30-715, (La.App. 2nd Cir. 6/24/98), 714 So.2d 895. In Walker, this court addressed the *623 issue of whether an action such as this is subject to the general prescription articles for delictual actions, La. C.C. arts. 3536 and 3537, or the special malpractice prescription statute, La. R.S. 9:5628. The plaintiff in Walker, supra, sued the hospital, Bossier Medical Center, contending that her claim was based in strict liability and that actions in strict liability against health care providers for damages caused by the transfusion of contaminated or defective blood are not governed by La. R.S. 9:5628. We found that Walker's claim, albeit based on strict liability, was also by statute a medical malpractice action subject to 9:5628.
In the instant case, the plaintiffs claims were not filed within the maximum limitations period for filing a medical malpractice claim, "within a period of three years from the date of the alleged act, omission or neglect," in accordance with La. R.S. 9:5628. This legislative enactment abrogates the discovery rule, the fourth category of the judicially created doctrine of contra non valentem, in medical malpractice cases. Therefore, we affirm the trial court's ruling sustaining the defendant, Jackson Parish Hospital's exception of prescription.
Next, we address the defendant blood centers, Lifeshare Blood Centers and Stewart Blood Centers. The blood centers were not included in La. R.S. 9:5628, the medical malpractice law, in 1980 when the plaintiff was given a blood transfusion. Blood centers were subject to a standard of strict liability for tainted blood until September 1981.[1] Strict liability for defects in blood was not abrogated until the 1981 enactments to La. C.C. art. 2322.1 and R.S. 9:2797.
Like Branch v. Willis-Knighton Medical Center, 92-3086 (La.1994), 636 So.2d 211, the injury in the instant case, a blood transfusion, occurred prior to the effective dates of La. C.C. art. 2322.1 and R.S. 9:2797. Both acts have been held to only apply prospectively. Therefore, the action against the blood centers, Lifeshare Blood Centers and Stewart Blood Centers, lies in strict liability. Thus, amendments to the statutes after the date of the transfusion, which granted physicians, hospitals and blood banks immunity from strict tort liability for blood transfusions which result in the transmission of a viral disease undetectable by appropriate medical tests, could not be retroactively applied so as to divest the plaintiff of her cause of action.
As the statutory amendment may only apply prospectively, we find that the trial court is correct in overruling the defendant blood center's exception of prescription because LA-R.S. 9:5628 did not apply to these two defendants and that the plaintiffs claims against Lifeshare Blood Centers and Stewart Blood Centers had not prescribed under either the one year or three year periods. Therefore, Lifeshare Blood Centers and Stewart Blood Centers may not avail themselves of the three-year prescription period. The plaintiff received notice during her July 19, 1996 visit with Dr. Dies that she had Hepatitis C. The claim was filed with PCF on April 17, 1997, within the one-year prescriptive period.

CONSTITUTIONAL CHALLENGE TO LA-R.S. 9:5628
In this assignment of error, the plaintiff urges that the trial court erred in failing to declare unconstitutional LSA-R.S. 9:5628 as applied to Hepatitis C, which is a disease with a latency period of greater than three years which makes it impossible for plaintiffs to comply with the procedural requirement to file claims "within a period of three years from the date of the alleged act, omission or neglect."
Our jurisprudence mandates that an attack upon the constitutionality of a statute must first be presented in the trial court. Also, the unconstitutionality of the statute must be specially pleaded and the grounds for the claim particularized. See Vallo v. Gayle Oil Co., Inc., 646 So.2d 859 (La.1994); *624 Johnson v. Welsh, 334 So.2d 395 (La.1976). Therefore, in order to successfully challenge the constitutionality of a statute, the party attacking the statute has a three-tier burden. First of all, the plea of unconstitutionality must first be made in the trial court. Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984); Vallo, supra; Johnson, supra. Next, the plea of unconstitutionality must be specially pleaded. Finally, the grounds outlining the basis of unconstitutionality must be particularized.
Vallo, supra, holds that the litigants should be afforded sufficient time to brief and prepare arguments regarding whether or not a statute is unconstitutional to avoid unfair prejudice to the parties. The State of Louisiana, through the attorney general, should be notified when the constitutionality of a statute is under consideration. La. R.S. 13:4448. Additionally, a contradictory hearing should have been held wherein both sides would be given an opportunity to brief and argue the issue. Williams v. State, Dept. of Health and Hospitals, 671 So.2d 899, 902 (La.1996).
In the instant case, the plaintiff attacked the constitutionality of the statutory three-year prescription period as a denial of equal protection in the petition. Although the trial court received the plaintiffs petition challenging the constitutionality of the statute and outlining the particular reasons why the plaintiff determined La. R.S. 9:5628 was unconstitutional, when the exceptions were heard on February 9, 1998 the constitutionality of the statute was not the focus of the argument. The constitutionality of a statute must first be questioned in the trial court. Therefore, the issue was considered by the trial court to be pretermitted.
We find that the plaintiffs constitutional claim is not properly before this court and has not yet been adjudicated. A proper disposition of this case, therefore, requires that we remand the case to the trial court for an evidentiary hearing, employment of the above test to this case, a determination of whether the plaintiff met all of the jurisprudential requirements and a ruling on whether R.S. 9:5628 is unconstitutional as it relates to Jackson Parish Hospital.

DECREE
For the foregoing reasons, we affirm the judgment of the trial court denying Lifeshare Blood Centers and Stewart Regional Blood Centers' exception of prescription on the basis of a one-year liberative prescriptive period, decreeing that the three-year prescriptive period set forth at LSA-R.S. 9:5628 cannot be applied to the plaintiffs claims against either Lifeshare Blood Centers or Stewart Regional Blood Centers and sustaining Jackson Parish Hospital's exception on the basis of a three-year prescription period.
We further amend the judgment to make the dismissal without prejudice and to remand this case to the trial court for an evidentiary hearing on whether R.S. 9:5628 is unconstitutional as it relates to Jackson Parish Hospital. Costs of this appeal are assessed against the plaintiff, Lifeshare Blood Centers and Stewart Regional Blood Centers equally.
AMENDED, AFFIRMED, AND REMANDED.
NOTES
[1] The medical malpractice law was amended and effective September 1981 included community blood centers. In 1982, the statute was amended to change the liability standard for blood providers from strict liability to negligence. The 1990 amendment, in subsec. A, following "chiropractor, dentist, psychologist," deleted "or"; and following "of this state," inserted "or community blood center or tissue bank as defined in R.S. 40:1299.41(A),". LSA R.S. 9:5628