714 So.2d 895 (1998)
Aiko WALKER, et ux., Plaintiff-Appellant,
v.
BOSSIER MEDICAL CENTER, Defendant-Appellee.
No. 30715-CA.
Court of Appeal of Louisiana, Second Circuit.
June 24, 1998.
Allen Parker Self, Jr., Shreveport, for Plaintiff-Appellant.
Rene Joseph Pfefferle, Baton Rouge, for Defendant-Appellee.
Before NORRIS, HIGHTOWER and PEATROSS, JJ.
*896 NORRIS, Judge.
The District Court sustained an exception of prescription filed by Bossier Medical Center Healthcare Foundation ("Bossier Medical"), dismissing the claims of Aiko Walker and Paul Walker against Bossier Medical with prejudice. The Court held that La. R.S. 9:5628 barred Aiko Walker's medical malpractice claim filed nearly 12 years after a blood transfusion but less than one year after she allegedly discovered the blood was contaminated with Hepatitis C. For the following reasons, we amend, affirm and remand.

I.
For purposes of this appeal, both parties treat the following factual allegations as true: In January 1981, Aiko Walker was hospitalized at Bossier Medical where she received a blood transfusion. More than a decade later, in February 1992, Walker was informed by her doctors that she suffered from Hepatitis C, the source of which was the 1981 blood transfusion. Thereafter, on January 23, 1993, Walker filed a request for a review of her claim by the medical review panel. After an adverse opinion was issued, the plaintiffs filed the instant suit in District Court against Bossier Medical asserting that it is strictly liable for damages allegedly caused by Walker's receipt of a transfusion of defective blood. Also, ultimately named as defendants were Lifeshare Blood Center and the Attorney General, although there is no indication in the appellate record that either has filed any responsive pleadings.
Nevertheless, Bossier Medical filed a peremptory exception of prescription or peremption arguing that the malpractice prescription statute, La. R.S. 9:5628, applied to Walker's claim and therefore the claim had clearly prescribed upon its face. The Walkers contended that the general prescription articles on delictual actions, which have been construed to allow prescription to run from the time of discovery, applied to the action, and therefore the claim has not prescribed. See also Owens v. Martin, 449 So.2d 448 (La. 1984). The court held that 9:5628 was the applicable prescriptive rule and sustained the exception. From this adverse judgment, the Walkers appeal.[1]

II.
The sole issue presented in this appeal is whether Walker's action is subject to the special malpractice prescription statute, La. R.S. 9:5628[2], or the general prescription articles for delictual actions, La. C.C. arts. 3536 and 3537 (1870) (now repealed); see also La. C.C. art. 3492 (1984), Revision Comments-1983.
Walker contends that (1) her claim is based in strict liability and (2) actions in strict liability against health care providers for damages caused by the transfusion of contaminated or defective blood are not governed by La. R.S. 9:5628. Walker cites Branch v. Willis-Knighton Medical Center,[3] a recent Louisiana Supreme Court decision, as authority for her propositions.
In Branch, the plaintiff underwent a blood transfusion in July or August of 1976. In 1989, he discovered that he had contracted hepatitis C from the blood used in the transfusion. Plaintiff brought suit less than a year later and the Supreme Court held that he acquired a valid cause of action in strict tort products liability arising from the sale of a defective product. The court also held that the plaintiff's strict tort products liability action was not subject to 9:5628. Branch, supra at 214.
*897 We agree that Walker's claim is based on strict liability. Strict liability for defects in blood was not abrogated until the 1981 enactments to La. C.C. art. 2322.1 and R.S. 9:2797.[4] The Branch opinion held that where the injury, i.e. the transfusion, occurred prior to the effective dates of La. C.C. art. 2322.1 and R.S. 9:2797, the action lies in strict liability. Branch, supra 636 So.2d at 214; see also Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988); Faucheaux v. Alton Ochsner Medical Found. Hosp. and Clinic, 470 So.2d 878 (La.1985); DeBattista v. Argonaut-Southwest Ins. Co., 403 So.2d 26 (La. 1981).

III.
However, Bossier Medical argues that neither the characterization of Walker's claim as strict liability nor the holding in Branch is determinative of the instant case. We agree.
Walker cites Branch for the proposition that strict liability actions cannot be subject to 9:5628 as written. However, we do not read the opinion to create such a blanket prohibition. Instead, the court reasoned that "9:5628 was intended to apply only to medical malpractice actions and was not intended to apply to strict products liability actions in tort." Branch, supra at 217.
The opinion noted that in 1975 the Medical Malpractice Act[5] defined malpractice as:
"any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient." See 1975 La. Acts No. 817 § 1.
However, effective October 1, 1976, after the cause of action in Branch arose, the definition of malpractice contained in La. R.S. 40:1299.41A(8) was amended to include:
"any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient." See 1976 La. Acts No. 183 § 1 (emphasis added).
Bossier Medical argues that Branch is distinguishable from the instant case principally because Branch dealt with a transfusion which occurred before the effective date of the 1976 amendment to the statutory definition of malpractice.
At the time the transfusion in Branch occurred, the definition of malpractice did not include "all legal responsibility ... resulting from defects in blood." The court relied on the pre-1976 definition as support for its conclusion. Id. at 217. Therefore, neither the characterization of the claim as strict liability nor the holding of Branch is determinative in the instant case; rather the critical question is whether this action for defective blood is classified as a medical malpractice claim and thus governed by 9:5628.
Because Walker's transfusion occurred after the effective date of the 1976 amendment, the claim is a medical malpractice claim. The result of the 1976 amendment was to subject such claims to all the special provisions of the Medical Malpractice Act: medical review panel, damages cap; and to the special prescriptive period. See Sonnier v. Opelousas Gen. Hosp., 95-1560 (La.App. 3d Cir. 5/8/96), 688 So.2d 1040; see also Landry v. Alton Ochsner Found. Medical *898 Ctr., 95, 883 (La.App. 5th Cir. 2/27/96), 671 So.2d 24; and DeBlanc v. Touro Infirmary, 96, 1965 (La.App. 4th Cir. 12/27/96), 686 So.2d 1015 (distinguishing Branch based upon the 1976 amendment to the definition of malpractice).
Our conclusion is bolstered by the fact that both the Medical Malpractice Act and 9:5628 were contemporaneous enactments inexplicably tied together to further the legislative purpose of averting an alleged malpractice insurance crisis. Branch, supra at 215. Because 9:5628 was designed to limit the volume and retrospective nature of malpractice litigation, to hold that the special malpractice prescriptive statute does not apply to a statutorily defined malpractice claim would circumvent the legislative intent. See also Wilkes v. Carroll, 30, 066 (La.App.2d Cir. 12/10/97), 704 So.2d 938 (generally stating that prescriptive periods applicable to medical malpractice claims are governed by La. R.S. 9:5628.); Shortess v. Touro Infirmary, supra.[6] Thus, Walker's action, albeit in strict liability, is also by statute a medical malpractice action subject to 9:5628.
Under 9:5628, even if an action is brought within one year from the date of discovery, it is barred if such claim is not filed "within a period of three years from the date of the alleged act, omission or neglect." SeeMartini v. Louisiana State University Medical Ctr.-Shreveport, 28, 167 (La.App.2d Cir. 1/22/97), 688 So.2d 642. Because the Walkers' claims were not filed until nearly twelve years after the transfusion, they have clearly prescribed upon their face.

IV.
We therefore affirm the District Court's sustaining of the exception of prescription or peremption in favor of Bossier Medical on the issue presented. As noted, however, the Walkers' constitutional claims and claim of a new cause of action arising in 1989 were not properly before this court and have not yet been adjudicated. Thus we amend the judgment to make the dismissal without prejudice and remand for further proceedings. Costs of this appeal is assessed against Aiko Walker and Paul Walker, plaintiffs.
AMENDED, AFFIRMED AND REMANDED.
NOTES
[1] At oral argument, both parties conceded that the constitutional issues and the issue concerning whether any new causes of action accrued are not properly before this court.
[2] § 5628. Actions for medical malpractice

A. No action for damages for injury or death against any physician, chiropractor, dentist, or hospital duly licensed under the laws of this state, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission or neglect, or within one year from the date of discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of discovery, in all event such claims must be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
La. R.S. 9:5628 (1981).
[3] 92-3086 (La.4/28/94), 636 So.2d 211.
[4] Both stated in part:

Strict liability or liability of any kind without negligence shall not be applicable to physicians, hospitals, hospital blood banks, or non-profit community blood banks in the screening, processing, transfusion ... which results in transmission of viral diseases undetectable by appropriate medical and scientific laboratory tests.
La. R.S. 9:2797 was enacted by 1981 La. Acts No. 331 § 1 effective July 15, 1981. La. C.C. art. 2322.1 was enacted by 1981 La. Acts 611 effective September 11, 1981. Both acts have been held to only apply prospectively. See Branch, supra. Although not pertinent for purposes of this appeal, the Fourth Circuit declared the two 1981 enactments unconstitutional due to procedural violations but noted that a subsequent enactment effective July 15, 1982 cured the violation, but only with respect to La. R.S. 9:2797 Casey v. Southern Baptist Hosp., 526 So.2d 1332 (La.App. 4 th Cir.1988).
[5] La. R.S. 40:1299.41 et seq.
[6] Shortess concerned a transfusion that occurred after the 1976 amendment to 40:1299.41 A(8), but prior to the abrogation of strict liability. Anent prescription, the court stated (in dictum): "Since plaintiffs could not have reasonably known the source of the blood represented to be Touro's until Touro's revelation of December 22, 1982, suits against the Blood Center on May 31, 1983, was timely. It was filed within three years of the November 26, 1980, operation. LSA-R.S. 9:5628."