798 So.2d 921 (2001)
Nelson Nadine WILLIAMS
v.
JACKSON PARISH HOSPITAL.
No. 2000-C-3170.
Supreme Court of Louisiana.
October 16, 2001.
Rehearing Denied November 16, 2001.
*922 Cornell R. Flournoy, John L. Hammons, Nelson, Shreveport, Hammons, Self, Counsel for Applicant.
Richard P. Ieyoub, Attorney General, Peter T. Dazzio, Philip C. Wilkinson, Jr., John E. Baker, Baton Rouge, Counsel for Respondent.
Larry M. Roedel, Baton Rouge, David A. Woodridge, Jr., Counsel for Patient's Compensation Fund Oversight (Amicus Curiae).
Kathryn M. Caraway, Katherine Conklin, Nairda T. Colon, New Orleans, Counsel for The Blood Center (Amicus Curiae).
*923 William L. Wilson, Counsel for Louisiana State Division of Administrators, and Louisiana Patient Compensation Fund (Amicus Curiae).
William S. McKenzie, Baton Rouge, Daniel C. Palmintier, Layfayette, Counsel for HCA Health Services of Louisiana, Inc. (Amicus Curiae).
Daniel C. Palmintier, Layfayette, Counsel for North Monroe Hospital (Monroe), Doctors Memorial Hospital (Matairie), Lakeview Medical Center, L.L.C. f/d/b, Lakeview Regional Medical Center, Highland Park Hospital (Covington/Mandeville), Medical Center of Baton Rouge Inc. f/d/b Medical Center of Baton Rouge (Baton Rouge), Lakeside Hospital (Metairie), Women's and Children's Hospital, Inc. d/b/a Women's and Children's Hospital (Lafayette), Galen Med. Inc. f/d/b Women's and children's Hospital (Lake Charles), HCA Highland Hospital, d/b/a Highland Hospital (Shreveport), Hamilton Medical Center, Inc. d/b/a Medical Center of Southwest Louisiana (Amicus Curiae).
Margaret Diamond, Monica A. Frois, New Orleans, Counsel for Doctor's Company (Amicus Curiae).
Charles F. Gay, Don S. McKinney, New Orleans, Counsel for Alton Oschsner Med. Foundation (Amicus Curiae).
Karen M. Fontana, Stewart E. Niles, Jr., New Orleans, Counsel for Louisiana Medical Mutual Ins. Co. and Louisiana State Medical Society (Amicus Curiae).
Donna DiMartino Fraiche, Sherry S. Landry, New Orleans, Erick Y. Miyagi, William S. McKenzie, Baton Rouge, Counsel for Our Lady of the Lake Hospital, Inc. (Amicus Curiae).
Clark R. Cosse, III, Peter T. Dazzio, Chris J. LeBlanc, Baton Rouge, Counsel for Louisiana Hospital Association (Amicus Curiae).
David R. Sobel, Alexandria, Counsel for Christus Health, Christus St. Frances Cabrini Hospital, Christus St. Patrick Hospital, Christus Schumpert Medical Center (Amicus Curiae).
LOBRANO, Justice Pro Tempore.[*]
Although we granted certiorari to address the constitutionality of La. R.S. 9:5628 as it applies to individuals with diseases that have latency periods in excess of three years, we find that this matter can be resolved on a statutory construction basis. We hold that plaintiff's action in strict products liability arising out of a defective blood transfusion is not within the scope of § 5628 and therefore has not prescribed. Our contrary holding in Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402 (La.4/11/00), 759 So.2d 45, is overruled.[1]

Facts
The facts are virtually undisputed. On May 29, 1980, Nelson Nadine Williams received a blood transfusion during childbirth at Jackson Parish Hospital (JPH), a qualified health care provider under the Medical Malpractice Act, La. R.S. 40:1299.41, et seq. (MMA).[2] A decade and a half later, Williams' doctor informed her that she had hepatitis C and that the most likely cause was the 1980 blood transfusion. *924 On April 17, 1997, Williams filed a complaint with the Patient's Compensation Fund (PCF) pursuant to the MMA. In her complaint, she alleged that JPH was strictly liable for the myriad damages caused by its 1980 "sale and administration" of defective blood or blood products.[3] Alternatively, she alleged that JPH "deviated from the applicable standards of appropriate medical care regarding the collection, testing, sale and administration of blood or blood products and the care and treatment which they provided to Nelson Nadine Williams."[4]
In response, JPH filed an exception of prescription in the district court citing the one-year and three-year prescriptive periods of § 5628. The district court found that even though Williams' claim was filed within one year of the date she discovered her cause of action, it was prescribed by the three-year limitation of § 5628 (i.e., suit was filed more than three years after the complained of act, omission or neglect the blood transfusion). While the district court recognized Williams' predicament, stating that "there was absolutely no way for plaintiff to comply with the three-year peremptive period of LSA-R.S. 9:5628,"[5] it declined to reach the issue of the constitutionality of § 5628, which Williams had raised, because that issue "was not the focus of the argument" when the exceptions were heard in February 1998.
On appeal, Williams argued that the general tort prescriptive period, La. C.C. art. 3492 (one year from the date of discovery), applied to her strict tort liability cause of action against JPH. Rejecting Williams' argument and relying on its recent decision in Walker v. Bossier Medical Center, 30,715 (La.App. 2nd Cir.6/24/98), 714 So.2d 895, writ denied, 98-2029 (La.11/13/98), 730 So.2d 450, the court of appeal explained its holding in Walker, supra, simply stating: "[w]e found that Walker's claim, albeit based on strict liability, was also by statute a medical malpractice action subject to 9:5628." 31,492 at p. 5 (La.App. 2nd Cir.1/13/99), 729 So.2d 620, 623, writ denied, 99-0458 (La.4/1/99), 742 So.2d 558. However, even though the court of appeal affirmed the finding that Williams' claim was prescribed under § 5628's three-year period, it remanded her case to the district court for a hearing on the constitutional issues. Id.[6]
After an evidentiary hearing on remand, the district court adopted its earlier *925 findings regarding the application of § 5628 to Williams' claim.[7] Reiterating its finding that it was impossible for Williams to comply with § 5628's three-year "peremptive" period, the district court nonetheless found the jurisprudence did not support a finding that § 5628 is unconstitutional. Judgment was rendered in JPH's favor. Relying on Whitnell v. Silverman, 95-0112 (La.12/6/96), 686 So.2d 23, and Crier v. Whitecloud, 496 So.2d 305 (La.1986)(on reh'g), which the court read as rejecting Williams' constitutional challenges, the court of appeal affirmed. 33,847 (La.App. 2nd Cir.10/20/00), 768 So.2d 866.[8] On Williams' application, we granted certiorari to consider her constitutional challenges. 00-3170 (La.3/16/01), 786 So.2d 741. As noted at the outset, we now resolve this matter on a statutory construction basis requiring that Boutte be revisited.

Introduction
Williams' strict liability cause of action against JPH is premised on the seminal case of DeBattista v. Argonaut-Southwest Insurance Co., 403 So.2d 26 (La.1981), which first recognized such claims. For ease of reference, we refer to her cause of action as a DeBattista claim.
In DeBattista, supra, we recognized health care providers' exposure to strict products liability claims arising out of defective blood transfusions, reasoning that "[a] distributor of blood is strictly liable in tort when blood he places on the market creates an unreasonable risk of harm to others and, in fact, results in injury or disease to a human being." 403 So.2d at 32. With that decision, Louisiana became one of the handful of states that imposed strict liability on hospitals (as opposed to blood banks) for defective blood transfusions.[9] In Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988), we recognized a hospital's strict liability arising out of the sale of defective blood, stating that "[t]he responsibility of a professional vendor or distributor is the same as that of a manufacturer." 520 So.2d at 391.[10]
*926 Addressing the nature of a DeBattista claim against a hospital for purposes of determining the applicable prescriptive period, this court in Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211, concluded that such claims are not malpractice claims governed by § 5628 since the language in that special prescriptive statute neither "mention[s] strict liability or products liability," nor "contain[s] the terms and concepts indispensable to the definition, classification and administration of strict tort products liability actions." 92-3086 at pp. 13-14, 636 So.2d at 217. Hence, in Branch we held that a plaintiff's strict products liability action against a hospital arising out of a defective blood transfusion was governed by the general tort prescriptive period (Article 3492). The ultimate result in Branch is significant because it held § 5628 inapplicable based on the nature of the plaintiff's actiona strict products liability claim arising out of the sale of defective blood"[d]espite the close relationship between `patient care' and the provision of blood to a patient." Davis v. Parker, 58 F.3d 183, 188 (5th Cir.1995).[11] The Branch court rejected the court of appeal's broad construction of § 5628 reasoning that "there is no evidence that the legislature intended by R.S. 9:5628 to curb any type of litigation other that traditional malpractice actions" and "because the statute grants immunities or advantages to a special class in derogation of the general rights available to tort victims, it must be strictly construed against limiting the tort claimants' rights against the wrongdoer." Branch, 92-3086 at pp. 9, 14, 636 So.2d at 215, 217.
Despite our specific rejection of a broad construction of § 5628 in Branch, we nonetheless took that approach in Boutte. In that case we reversed the appellate decision that followed Branch and held that "plaintiffs' claim [for damages arising out of a defective blood transfusion] is in the nature of a medical malpractice claim, regardless of the underlying legal theory (strict liability) used to support the claim." Boutte, 99-2402 at p. 4, 759 So.2d at 48. The sole basis for our not following Branch was the 1976 amendment to the MMA's definition of "malpractice" which added liability for defective blood within the Act's scope. Boutte construed the effects of that amendment as not only expanding the scope of the MMA, but also expanding the scope of § 5628 to include DeBattista claims.
When we decided Branch in 1994, the 1976 amendment had been in effect for eighteen years. Chronologically, however, the blood transfusion at issue in Branch occurred shortly before the effective date of that amendment. Branch did not address whether that amendment was of any *927 consequence.[12] That silence in Branch allowed for the argument in Boutte that the 1976 amendment effectively "overruled" Branch as to DeBattista claims arising out of post-amendment blood transfusions. Accepting that argument, Boutte held that all claims arising out of post-amendment blood transfusions constitute "malpractice" and thus fall within the scope of § 5628. For the following reasons, we conclude that Boutte's interpretation of the effects of the 1976 amendment was erroneous.

Discussion
At all time pertinent to this case § 5628 has provided:
No action for damages for injury or death against any ... hospital duly licensed under the laws of this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.
Although § 5628 does not contain the term "malpractice," it is well settled that this statute was enacted to provide a special prescriptive period for medical malpractice actions. This special prescriptive period was enacted in 1975 (Act 808) during the same legislative session as the MMA (Act 817). The following year the Legislature adopted a similar act for state providers, the Medical Liability for State Services Act, La. R.S. 40:1299.39, et seq. (the MLSSA). Significantly, the Legislature did not place § 5628 (the prescription statute) within Title 40, where both the MMA and MLSSA are located; rather, it placed it in Title 9 as a Civil Code ancillary. This placement apparently was selected so that § 5628 would be a separate provision, not tied to a health care provider's status as a qualified provider under either the MMA or the MLSSA. Indeed, § 5628 is neutral on its face, applying regardless of a provider's status as qualified or unqualified.
In 1976, the Legislature amended the MMA's original definition of malpractice (which mirrored the scope of a traditional malpractice action), and expanded that definition to include all liability arising out of defective blood transfusions. More particularly, the 1976 amendment added the highlighted language:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood, tissue, transplants, drugs and medicines, or from defects in or failures of prosthetic devices, implanted in or used on or in the person of a patient. La. R.S. 40:1299.41 A(8)(Emphasis supplied).
That same highlighted language was added in 1976 to the MLSSA, but was deleted in 1978 and never reenacted. As discussed elsewhere, the absence of that language in the MLSSA supports overruling Boutte.
*928 In 1999, the Legislature expressly addressed for the first time the applicable prescriptive period governing claims arising out of defective blood transfusions by enacting La. R.S. 9:5628.1.[13] That statute provides a special one-year prescriptive and three-year peremptive period for liability arising out of the "use of blood," which liability includes causes of action based on "products liability" and "strict liability" arising out of defective blood transfusions. Designated as a remedial statute, § 5628.1 is retroactive; however, the Legislature provided two exceptions: (i) for those claims filed within the "window of opportunity" provided in the Act, and (ii) for pending claims. The latter exception is set forth in the Act, which declares that this new legislation "shall not affect any legal proceedings filed prior to the effective date of this Act." 1999 La. Acts No. 539 § 2. While Williams' pending claim was not affected by this 1999 legislation, this new legislation is relevant, as explained below, in that it further supports overruling Boutte.
With that statutory background in mind, the dispositive inquiry in this case is identical to the issue decided in both Branch and Boutte; namely, whether a strict products liability claim arising out of a pre-1982 (pre-blood shield statutes) defective blood transfusion prescribed under § 5628 *929 or was timely filed under the general tort prescriptive period (Article 3492).

Statutory analysis of § 5628
Although § 5628 has been amended several times since its enactment in 1975 to add to the list of enumerated providers (for example, community blood banks were added in 1990), the conduct-based standard for determining the type of actions to which this statute applies has remained constant: "action[s] ... based upon tort, or breach of contract, or otherwise, arising out of patient care." Branch construed that standard as synonymous with a traditional medical malpractice action, which it characterized as follows:
[T]he traditional medical malpractice action [is] based primarily on professional negligence and implied contract concepts, viz., "legal wrong," "breach of duty," "negligent or unlawful act or omission," "standard of care," "professional services," "degree of skill ordinarily employed," "same community or locality," "reasonable care and diligence," "breach of contract" and "treatment performed or furnished."
Branch, 92-3086 at p. 13, 636 So.2d at 217.
Applying that traditional medical malpractice analysis, Branch held that a DeBattista claim was not an action arising from patient care; rather, it was a strict products liability claim arising from the sale of a defective product, i.e., blood, and thus was governed by Article 3492, the general tort prescriptive period. The lynchpin of Boutte's contrary holding was its interpretation and application of the effects of the 1976 amendment to the MMA's definition of malpractice.

Boutte revisited
Boutte relied on the MMA's expanded definition of malpractice to bring DeBattista claims within the ambit of § 5628. In support of that approach, Boutte cited several appellate decisions that purportedly took the same approach. Only two of those cases involved the prescription issue presented by § 5628; the other two cases involved the prematurity issue presented by the MMA's medical review panel requirement.[14] The latter issue undoubtedly requires utilizing the MMA's definition of "malpractice;" consequently, Boutte's reliance on those cases as support for utilizing that expanded definition outside of the MMA's parametersfor determining the scope of § 5628was misplaced.
The principal "prescription issue" case Boutte cited was Walker, supra.[15] While the appellate court in Boutte rejected Walker and followed Branch's reasoning, this court in Boutte did just the opposite. This court distinguished Branch on the basis that Branch involved a pre 1976 amendment transfusion; whereas, Boutte involved a post 1976 amendment transfusion. Therefore, this court in Boutte (as in Walker) held that the MMA's expanded definition of malpractice dictated a different result than in Branch. We conclude that the reasoning of Boutte (and Walker) was erroneous.[16]

*930 Mistaken Link of MMA's definition of malpractice with § 5628

The application of § 5628 does not depend on whether the defendant is a qualified health care provider under the MMA, or on whether the claim alleged in the plaintiff's complaint is "malpractice" as defined under that Act. What the application of § 5628 depends on is whether the two restrictions the Legislature set forth in that special prescription statute are met; namely: (i) the defendant must fall within one of the categories of enumerated providers; and (ii) the claim asserted must meet the statutory, conduct-based standard, i.e., the action, whether in tort, in breach of contract, or otherwise, must arise out of patient care. In this case, the first restriction is met because JPH is a state licensed hospital, but the second restriction is not satisfied.
In Boutte, we reasoned that since a DeBattista strict products liability claim was statutorily defined as "malpractice" under the MMA, it likewise met § 5628's second requirement that the action arise out of "patient care." Our linking the MMA's malpractice definition with § 5628 was a mistake, and we now overrule Boutte for the following five reasons.
First, Boutte ignored well established principles of interpreting prescriptive statutes. Prescriptive statutes are strictly construed in favor of maintaining a plaintiff's cause of action; absent clear, contrary legislative intent, "prescriptive statutes which can be given more than one reasonable interpretation should be construed against the party claiming prescription." Maltby v. Gauthier, 506 So.2d 1190, 1193 n. 5 (La.1987); Branch, supra. The scope of prescriptive statutes should not be extended by construction. See Broussard v. Sears Roebuck & Co., 568 So.2d 225 (La.App. 3rd Cir.1990)(rejecting an attempt to expand by construction § 5628 to include an optometrist despite the MMA's inclusion of optometrists as health care providers); but see Shorts v. Gambino, 570 So.2d 209 (La.App. 5th Cir.1990). Violating these principles, Boutte both broadly construed and extended by construction the scope of § 5628 by referencing the MMA's expanded definition of malpractice.
Second, Boutte ignored the Legislature's placement of § 5628 as a separate statutory provision, apart from either the MMA or the MLSSA, and ignored the existence in § 5628 of its own conduct-based standard that governs the scope of its application. Section 5628's application, as analyzed above, turns neither on whether the enumerated provider is qualified under the MMA, nor on whether the claim asserted is "malpractice" as defined under that Act; it follows that the MMA should play no part in determining the scope of § 5628's application.
Third, Boutte failed to recognize the lack of any evidence suggesting the Legislature intended the MMA's expanded definition of malpractice to apply in any context other than the MMA. Rather, as we noted in Sewell v. Doctors Hospital, 600 So.2d 577 (La.1992), that amendment was enacted at a time when health care providers were exposed to strict products liability claims arising out of defective blood transfusions. That amendment served to bring such strict liability claims within the ambit of the MMA's special protections from the ordinary ramifications of tort liability. *931 The MMA's special protections include the medical review panel and limitations on damages; the Act's protections do not include § 5628. By referencing the MMA's expanded definition of "malpractice" in a context outside the scope of the MMA's special protectionsin determining the scope of "patient care" under § 5628 Boutte erred.
Fourth, relying on Boutte's analysis in future cases will lead to questionable, if not constitutionally infirm, results. Boutte reasoned:
We are not called upon to "interpret" the language of La. R.S. 9:5628 in a vacuum, seeking any enlightening definition of malpractice. Instead, we are called upon to determine whether La. R.S. 9:5628 applies to the particular type of cause of action these plaintiffs pursue.
In this case plaintiffs have pleaded an action against a private hospital covered by the Medical Malpractice Act. To determine whether a claim against a private hospital is in the nature of a malpractice claim, we must turn to the definition of malpractice in that Act. Once a determination is made that the nature of the cause of action is one for medical malpractice, we look to La. R.S. 9:5628 for guidance on prescription because it is the special statute of limitations for that type of action. Boutte, 99-2402 at p. 4, 759 So.2d at 48 n. 9 (Emphasis supplied).
As the underscored references suggest, if the defendant were a public hospital, Boutte would have looked to the MLSSA to fill the "vacuum" in interpreting § 5628. However, referencing the MLSSA presumably would have resulted in the opposite outcome given the lack of any reference in the MLSSA to "responsibility ... arising from defects in blood...."[17] Utilizing Boutte's approach would thus lead to a constitutional, equal protection problem; a cause of action arising out of the same conduct would prescribe against a private hospital, but not against a public hospital with no apparent justifiable or rational reason for the distinction.
Finally, Boutte ignores § 5628's legislative history. Despite Branch's holding and clear instructions on the language necessary to bring DeBattista claims within the scope of § 5628, the Legislature neither amended nor reenacted that statute. Not until 1999 did the Legislature enact a specific prescriptive and peremptive statute expressly governing such strict products liability claims, La. R.S. 9:5628.1. The logical argument (which the Boutte plaintiffs made) is that the Legislature would not have enacted § 5628.1 if it always intended § 5628 would govern strict liability claims arising out of defective blood transfusions.[18] The passage of that special *932 prescriptive and peremptive statute (and its retroactive effect) is a strong indication that the Legislature never intended § 5628 would govern strict liability claims arising out of defective blood transfusions.
Summarizing, we are satisfied that our abandonment of Branch's traditional medical malpractice analysis in favor of Boutte's expanded approach was wrong. The interpretive "vacuum" Boutte filled by referencing the MMA should have been filled by following Branch. We overrule Boutte and hold that Branch correctly concluded that all pre-1982 (pre-blood shield statutes) claims against hospitals in strict products liability arising out of defective blood transfusions (DeBattista claims) are not traditional medical malpractice claims and thus are not governed by § 5628, but rather are governed by Article 3492. Given the district court's conclusion, affirmed on appeal, that Williams' claim was filed within one year of discovery, it has not prescribed. To the extent that Williams' complaint alleges separate claims based on traditional medical malpractice grounds, such claims are prescribed.

Decree
For the above and foregoing reasons, we reverse the court of appeal and remand to the district court for further proceedings.
KNOLL and VICTORY, JJ., dissent and assign reasons.
TRAYLOR, J., dissents for reasons assigned by KNOLL and VICTORY.
VICTORY, J., dissenting.[**]
When plaintiff applied for a writ of certiorari to this court on Nov. 20, 2000, the only error assigned was the failure of the court of appeal to hold La. R.S. 9:5628 unconstitutional. Plaintiff did not even suggest that this court overrule Boutte or that the holding of this court in Boutte was incorrect. As the majority opinion points out, we granted certiorari in this case for the sole purpose of examining the constitutionality of La. R.S. 9:5628. Nevertheless, the majority now overrules Boutte, a decision unanimously adopted by seven Justices of this court only 17 months ago. I cannot agree with this action.
When we decided Boutte, seven elected Justices of this Court considered virtually the same arguments now adopted by the majority in this case. After giving serious consideration to those arguments, we rejected them and overruled the court of appeal opinion in favor of the Boutte plaintiffs. Now the majority, composed of two elected Justices and two Justices sitting pro tempore, concludes that the Justice pro tempore who now writes for the majority of this Court was correct in the first place when he wrote the court of appeal decision in Boutte. Taking a 180 degree turn, the Court reverses Boutte. and endorses the very reasoning we so recently and unanimously rejected. I cannot endorse this kind of abrupt about face when no new arguments have been presented. Such judicial flip-flops do nothing for the integrity of our judicial system and are especially ill-advised when a newly elected Justice will be joining this Court shortly.
Plaintiff has pleaded a claim for damages she alleges occurred as a result of receiving a transfusion of a tainted blood product in a private hospital. There is no question that such a claim is a strict liability tort claim. We held in DeBattista v. Argonaut-Southwest Insurance Co., 403 *933 So.2d 26 (La.1981) that a distributor of blood is strictly liable in tort. 403 So.2d at 32. See also Shortess v. Touro Infirmary, 520 So.2d 389 (La.1988). There is also no question that the transfusion was given as part of the patient care plaintiff received while in the defendant's hospital.
At all pertinent times La. R.S. 9:5628 provided a prescriptive period applicable to this case. An examination of the language of the statute demonstrates that it was intended to have wide application to any:
... action for injury or death against any ... hospital ... whether based on tort, or breach of contract, or otherwise, arising out of patient care ... [Emphasis added].
Since the malpractice action filed by plaintiff in this case is an action for injury against a hospital based on a species of tort arising out of patient care, this specialized malpractice prescriptive statute, rather than the general provision regarding delicts, clearly controls in this case. We need go no further than the plain language of La. R.S. 9:5628.
In my view, the Court fell into error in Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211 when it concluded that La. R.S. 9:5628 did not encompass strict liability tort cases involving defective blood received in a hospital in the course of patient care. La. R.S. 9:5628 should have been applied as written to cover such strict liability tort malpractice claims. In Branch the Court held that strict liability blood claims would not be considered as malpractice claims since La. R.S. 9:5628 did not specifically mention strict liability or blood cases. Then Justice Dennis, writing for the majority, erroneously concluded that the legislature, because it did not expressly refer to blood or strict liability, must not have intended such cases to fall within the scope of this special malpractice prescription statute. In my view, that conclusion was strained at best and it is Branch that should be overruled.
In Boutte, we found it unnecessary to overrule Branch because the legislature had already taken action that effectively accomplished that same end. In 1976, after the occurrence of the tort that formed the basis of the Branch claim, the legislature amended the definition of malpractice to expressly cover liability for defective blood products. The argument made in Branch, i.e., that the legislature did not intend blood cases to fall within the ambit of malpractice, can no longer be made. The legislature, by bringing blood claims within the statutory definition of malpractice in 1976, ended all legitimate debate as to whether it intended strict liability blood claims arising after the amendment to be governed by La. R.S. 9:5628, the special malpractice prescription statute.
I do not agree that Boutte used the definition in the Medical Malpractice Act to expand the types of actions governed by La. R.S. 9:5628. The statute was already clear on its face. Boutte merely made it plain that any argument to the contrary advanced in Branch was undermined by the 1976 amendments to the MMA. Nor can I agree that the passage of LA. R.S. 9:5628.1 supports the result reached by the majority. When passed in 1999, La. R.S. 9:5628.1, an even broader malpractice prescription statute, did not replace or repeal La. R.S. 9:5628. It applies only to cases filed after its passage in 1999. La. R.S. 9:5628 is still fully applicable to this claim filed in 1997.
Finally, any difference in result in the application of La. R.S. 9:5628 to claims made under the public and private malpractice acts is the very issue that led us to grant this application. The defendant and the Attorney General for the State of *934 Louisiana have made cogent and persuasive arguments that the public and private acts contain provisions that make them harmonious and resolve the issue of perceived disparate treatment of patients receiving transfusions in public and private hospitals. In any event, the fact that a faithful reading of La. R.S. 9:5628 may require us to address a further constitutional issue is not a valid reason to adopt a strained interpretation of the prescription statute or to overrule a precedent established by a recent and unanimous vote of this Court. Such result oriented decision making cannot make for good law.
Accordingly, I respectfully dissent.
KNOLL, Justice, dissenting.[***]
I dissent from the majority opinion in this case basically for the reasons espoused in Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402 (La.4/11/00), 759 So.2d 45, the case overruled in the majority opinion.[1] For the following reasons, I also find that the majority strays far from the applicable language of LA.REV.STAT. ANN. § 9:5628.
We unanimously held in Boutte that LA. REV.STAT. ANN. § 9:5628 is applicable to strict liability actions arising out of blood transfusions. In so doing, we reached the pragmatic and consistent result that the Medical Malpractice Act (MMA) and the prescriptive period that applies to medical malpractice actions procedurally governed a strict liability action arising out of blood transfusions. Today, a bare majority of this Court reaches the incongruous result of having declared the medical malpractice prescriptive statute inapplicable while concurrently declaring that the MMA's procedural mechanisms are applicable to the claim. Considering the close ties between the MMA and LA.REV.STAT. ANN. § 9:5628, as the majority acknowledges, I find the distinction imposed by the majority unwarranted.
The majority relies heavily on Branch v. Willis-Knighton Medical Center, 92-3086 (La.4/28/94), 636 So.2d 211, for the proposition that a cause of action must be one of "medical malpractice" for LA.REV. STAT. ANN. § 9:5628 to apply. In this regard, I find that the majority errs. In its determination that the "sale of blood, while closely related to patient care is not inherently a traditional medical malpractice action," the majority focuses on the defendant's conduct. Although I find no inherent problem in making the defendant's conduct the focal point, I believe, under such an examination, that the sale of defective blood falls within the legal category of medical malpractice.
*935 The strict liability claim for the sale of defective blood cannot be viewed in a vacuum as a simple sale. The transfusion of blood is an integral part of the physician's or hospital's treatment of the patient in certain medical circumstancesone in which the sale of blood cannot reasonably be dissected from treatment. Therefore, the strict liability for the sale of defective blood should be considered medical malpractice for purposes of LA.REV.STAT. ANN. § 9:5628 as construed in Branch.
Even though I find that the plaintiff's claim is prescribed under the standard enunciated in Branch, a more straightforward manner exists to address LA.REV. STAT. ANN. § 9:5628. The Civil Code establishes only two sources of law in Louisiana: legislation and custom. See LA. CIV.CODE ANN. art. 1. Within these two categories, legislation is superior to custom and will supersede it in every instance. See Revision Comments, LA. CIV.CODE ANN. art. 1; LA. CIV.CODE ANN. art. 3. In recognition of that well established principle, LA. CIV. CODE ANN. art. 3 further provides that "[w]hen the law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."
I find that we strayed from this basic civilian tenet when we held in Branch that LA.REV.STAT. ANN. § 9:5628 "does not contain any provision that expressly or implicitly refers to strict liability or products liability." Branch, 636 So.2d at 214. This artificially narrow interpretation led this Court to hold in Branch that LA.REV.STAT. ANN. § 9:5628 was only intended for actions traditionally classified under the general prevailing meaning of "medical malpractice." Id. The majority's reliance on Branch in this case, rather than the words of the statute, is misplaced.
A plain reading of LA.REV.STAT. ANN. § 9:5628 does not support the majority's conclusion that a strict liability action for defective blood is excluded from the application of LA.REV.STAT. ANN. § 9:5628. The statute reads:
No action for damages or injury or death against ... any hospital duly licensed under the laws of this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought ... at the latest within a period of three years from the date of the alleged act, omission or neglect."
LA.REV.STAT. ANN. § 9:5628 (emphasis added).
The language "tort ... arising out of patient care" clearly encompasses delictual actions based on strict liability for blood sold and used in transfusions. It is clear and well-established that strict liability is a legal theory which may form the basis of a tort action and, as such, is simply a subspecies of the fault recognized in LA. CIV. CODE ANN. art. 2315. WILLIAM CRAWFORD, 12 LOUISIANA CIVIL LAW TREATISE §§ 2.1, 2.5 (West Group 2000). Patients do not buy and sell blood as a pure commercial transaction; rather, blood is bought and used as an integral part of the care afforded patients at the time of medical treatment. Thus, although a transfusion of contaminated blood involves a defective product, the blood is inextricably tied to the patient's care under LA.REV.STAT. ANN. § 9:5628. I find that the sale and transfusion of blood arise out of patient care and the word "tort" utilized therein encompasses the action in strict liability. Therefore, I find that LA.REV.STAT. ANN. § 9:5628 applies to the plaintiff's claim and is perempted.
The Legislature's selection of the word "tort" and the statute's directive that it be applied to "all persons whether or not *936 infirm or under disability of any kind and including minors and interdicts," evidence that LA.REV.STAT. ANN. § 9:5628 is a far-reaching statute. However harsh the application of LA.REV.STAT. ANN. § 9:5628, mincing words and linguistic gymnastics should not be utilized to disregard the statutory language. Rather, litigants should seek redress from the Legislature to change the law.
Although the result reached in cases such as this one is harsh, particularly with regard to the latent blood disease in the case sub judice, the language of the statute is clear and should be applied accordingly.
For these reasons, I respectfully dissent.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon. Retired Judge Philip Ciaccio, assigned as Justice Pro Tempore, sitting for associate Justice Bernette J. Johnson.
[1] Because the instant case is factually parallel to Boutte, supra, the parties apparently relied on Boutte's holding as dispositive of § 5628's application and focused their arguments solely on the constitutional issues. Before resolving this matter by overruling Boutte, we invited further argument and briefing on that issue.
[2] She also received fibrinogen, another blood product.
[3] Williams also named in her complaint the blood provider, Lifeshare Blood Center. After receiving notice that Lifeshare was not a qualified health care provider, Williams filed suit against Lifeshare in district court. Lifeshare in turn filed a third party complaint against another blood provider, W.E. & Lela I. Stewart Blood Center d/b/a Stewart Regional Blood Center. These two defendants are not governed by § 5628 because that statute was not amended to include blood centers until 1990, which was after Williams' blood transfusion. These two defendants are not before us.
[4] In her brief to this court, Williams represents that her claim is in strict liability based on the sale and administration of a defective product by a hospital that was a qualified health care provider under the MMA at the time of the blood transfusion.
[5] In making that statement, the district court relied upon the following three factual findings:

[1] the disease of Hepatitis C was not specifically identified until 1989, nine years later;
[2] the disease identifying test (PCR) was not developed until 1993 or 1994, thirteen to fourteen years later; and
[3] the disease itself takes thirteen to fourteen years to develop symptoms from the date of infection and up to twenty years to develop into the disease of Hepatitis C cirrhosis of the liver.
[6] JPH filed a writ application from that appellate decision, arguing that the appellate court erred in upholding the district court's factual finding that Williams' action was filed within one year of discovery. This court denied that application. 99-0458 (La.4/1/99), 742 So.2d 558.
[7] Shortly after the court of appeal remanded this action, Williams filed a declaratory judgment action on the constitutional issues, naming both JPH and the Attorney General as defendants. That declaratory action was consolidated with this remanded action.
[8] The court of appeal limited its review to Williams' constitutional challenges based on denial of due process and access to courts, and discrimination based on physical condition, alleged violations of La. Const. Art. I, §§ 3 and 22; it declined to address Williams' alternative argument that the disparity between the definitions of "malpractice" in the state and private medical malpractice acts violates her equal protection and due process rights. The court found Williams failed to raise this argument properly in the district court and held the district court erred in considering this additional ground in its reasons for judgment. Since we resolve the issue presented on another basis, we do not reach this issue.
[9] As in the other handful of states that recognized such strict liability claims, the Louisiana Legislature responded by enacting "blood shield" statutes in 1981 and 1982, removing, at least in part, such liability. La. R.S. 9:2797 and La. C.C. art. 2322.1. In Faucheaux v. Alton Ochsner Medical Foundation Hosp. & Clinic, 470 So.2d 878 (La.1985), however, we held that the blood shield statutes could not be retroactively applied so as to divest plaintiffs with such strict tort liability claims of their causes of action.
[10] In Shortess, supra, the plaintiff's claim against the hospital was filed with the medical review panel within a year of the blood transfusion, and there was no latency period or prescription problem as to that claim. The reference to § 5628 in that case therefore was dicta.
[11] Such DeBattista claims are based on the conceptual view of a blood transfusion as a "sale" of a separate productas "a sale of blood which the patient takes home in a package." Roberts v. Suburban Hosp. Ass'n, 73 Md.App. 1, 532 A.2d 1081, 1088 (1987). The sale of blood is viewed as a separate transaction from the hospital's rendering of patient care. Under this conceptual view, the separate sale of blood gives rise to a separate strict liability claim. This view highlights the fundamental distinction between a DeBattista (strict products liability) claim and a traditional malpractice action.

Unlike the sale of a product that can give rise to a strict tort liability claim, the rendering of a service can only give rise (in tort) to either a negligence or an intentional tort claim. Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law § 21-1 (1996). As discussed elsewhere, the blood shield statutes redefine a blood transfusion as a medical service, thereby precluding strict liability claims for post-1982 blood transfusions. See Shortess v. Touro Infirmary, 520 So.2d 389, 391 n. 5 (La.1988)(citing Roberts, supra, and noting that nationwide blood transfusions are generally characterized as services, not sales.)
[12] The court of appeal in Branch addressed that amendment, stating that "we consider the definition's subsequent reference to responsibility for particular defects to clarify, if not restrict, the [broad] scope of the definition of malpractice." Branch v. Willis-Knighton Med. Ctr., 607 So.2d 883, 885 n. 1 (La.App. 2d Cir.1992), rev'd by, 92-3086 (La.4/28/94), 636 So.2d 211.
[13] That statute, La. R.S. 9:5628.1, now provides:

A. No action for damages against any healthcare provider as defined in this Section, whether based upon negligence, products liability, strict liability, tort, breach of contract, or otherwise, arising out of the use of blood or tissue as defined in this Section shall be brought unless filed in a court of competent jurisdiction within one year from the date of the alleged cause of action or other act, omission, or neglect, or within one year from the date that the alleged cause of action or other act, omission, or neglect is discovered or should have been discovered; however, except as provided in Subsection B, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the act, omission, or neglect.
B. The provisions of this Section are remedial and apply to all causes of action without regard to the date when the alleged cause of action or other act, omission, or neglect occurred. However, with respect to any cause of action or other act, omission, or neglect occurring prior to July 1, 1997, actions against any healthcare provider as defined in this Section, must, in all events, be filed in a forum of competent jurisdiction on or before July 1, 2000. The three-year period of limitation provided in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, shall not be renounced, interrupted, or suspended.
C. Notwithstanding any other law to the contrary, in all actions brought in this state against any healthcare provider as defined in this Section, whether based on strict liability, products liability, tort, breach of contract or otherwise arising out of the use of blood or tissue as defined in this Section, the prescriptive and peremptive periods shall be governed exclusively by this Section.
D. The provisions of this Section shall apply to all persons whether or not infirm or under disability of any kind and including minors and interdicts.
E. The peremptive period provided in Subsection A of this Section shall not apply in cases of intentional fraud or willful concealment.
F. As used in this Section:
(1) "Healthcare provider" includes those individuals and entities provided for in R.S. 9:2797, Civil Code Article 2322.1, R.S. 40:1299.39, and R.S. 40:1299.41, whether or not enrolled with the Patient's Compensation Fund.
(2) "The use of blood or tissue" means the screening, procurement, processing, distribution, transfusion, or any medical use of human blood, blood product and blood components of any kind and the transplantation or medical use of any human organ, human or approved animal tissue, tissue products or tissue components by any healthcare provider. (Emphasis supplied.)
[14] DeBlanc v. Touro Infirmary, 96-1965 (La. App. 4th Cir.12/27/96), 686 So.2d 1015, and Sonnier v. Opelousas Gen. Hosp., 95-1560 (La. App. 3rd Cir.5/8/96), 688 So.2d 1040.
[15] The other "prescription issue" case Boutte cited was Neal v. Pendleton Mem'l Methodist Hosp., 99-0040 (La.App. 4th Cir.4/21/99), 733 So.2d 698, writ denied, 99-1870 (La.10/8/99), 751 So.2d 221. Both the Neal court and the appellate court in this case simply relied on Walker, supra, to reach the same result.
[16] The Walker court reasoned:

At the time the transfusion in Branch occurred, the definition of malpractice did not include "all legal responsibility ... resulting from defects in blood." The court [in Branch] relied on the pre-1976 definition as support for its conclusion ... Because Walker's transfusion occurred after the effective date of the 1976 amendment, the claim is a medical malpractice claim. The result of the 1976 amendment was to subject such claims to all the special provisions of the Medical Malpractice Act: medical review panel, damages cap; and to the special prescriptive period.... Walker, 30,715 at pp. 4-5, 714 So.2d at 897-98 (Emphasis supplied).
[17] As noted earlier, the MLSSA was amended in 1976 to include such language in the definition of malpractice under that Act. That language was removed from the MLSSA in 1978 and was never reenacted. Claims arising out of defective blood transfusions (with the exception of those falling within the narrow window between 1976 and 1978) have been held to fall outside the scope of the MLSSA See Doe v. Med. Ctr. of Louisiana, 612 So.2d 1050, 1052 (La.App. 4th Cir.), writ denied, 613 So.2d 1005 (La.1993)(holding that the public hospital's acts of "collecting and screening blood" were not included within the meaning of "health care," and thus not "malpractice," under the MLSSA).
[18] Boutte rejected that argument reasoning that the 1999 legislation merely expanded the application of § 5628's three-year limitation period and that "the statute specifically states that it does not affect pre-1999 claims." Boutte, 99-2402 at p. 7, 759 So.2d at 50 n. 16. This was a misstatement. The 1999 Act states that it is remedial and thus retroactive; the only claims it excludes are those that were pending on the effective date of the Act and those filed within the "window of opportunity" provided in the Act.
[**] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon. Retired Judge Philip Ciaccio, assigned as Justice Pro Tempore, sitting for associate Justice Bernette J. Johnson.
[***] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon. Retired Judge Philip Ciaccio, assigned as Justice Pro Tempore, sitting for Associate Justice Bernette J. Johnson.
[1] "Fundamental and elementary principles recognize that certainty and constancy of the law are indispensable to orderly social intercourse, a sound economic climate, and a stable government." Johnson v. St. Paul Mercury Ins. Co., 256 La. 289, 236 So.2d 216, 218 (1970), overruled on other grounds, Jagers v. Royal Indem. Co., 276 So.2d 309 (La.1973). Certainty is a supreme value in the civil law system to which we are heirs. MERRYMAN, THE CIVIL LAW TRADITION 50 (Stanford University Press 1969). Although "one of the fundamental rules of [the civil law tradition] is that a tribunal is never bound by the decisions which it formerly rendered: it can always change its mind," 1 MARCEL PLANIOL, TREATISE ON THE CIVIL LAW § 123 (La. State Law Inst. Trans. 1959) (12th ed. 1939), we should be ever vigilant of our duty to foster certainty and constancy of the law and to provide consistent guidance to the courts of this state. Accordingly, we should remain faithful to our earlier decisions that establish a rule of law because there is a need in our civilian tradition to provide for the consistent interpretation of the law.