850 So.2d 911 (2003)
Joyce S. MUDD and Lee Mudd, Plaintiffs-Respondents,
v.
CHRISTUS HEALTH NORTHERN LOUISIANA d/b/a Christus Schumpert Health System, Defendant-Applicant.
Joyce S. Mudd and Lee Mudd, Plaintiffs-Respondents,
v.
Lifeshare Blood Centers, Defendant-Applicant.
Nos. 37,133-CW, 37,145-CW.
Court of Appeal of Louisiana, Second Circuit.
June 25, 2003.
*912 Nelson, Hammons & Self by John L. Hammons, Cornell R. Flournoy, Shreveport, for Plaintiffs-Respondents.
Mayer, Smith & Roberts by Mark A. Goodwin, Shreveport, for Defendant-Applicant Christus Health Northern Louisiana d/b/a Christus Schumpert Health System.
*913 Cook, Yancey, King & Galloway by Cynthia C. Anderson, Shreveport, for Defendant-Applicant LifeShare Blood Centers.
Before BROWN, DREW and MOORE, JJ.
MOORE, J.
The defendants, Christus Health Northern Louisiana ("Schumpert") and LifeShare Blood Center, seek review of an interlocutory ruling that denied their exceptions of prescription. This court initially granted a writ to examine the record more closely. For the reasons expressed, we now recall the writ, affirm the judgment and remand the case.

Procedural Background
The plaintiff, Mrs. Mudd, underwent a hysterectomy at Schumpert in early 1980. In deposition she stated that she received "at least 10" units of blood supplied to Schumpert by LifeShare. She alleged that she was diagnosed with Hepatitis C in November 1998, and had no other risk factors for the disease. She filed for a medical review panel ("MRP") in June 1999.
In October 1999, Schumpert filed an exception of prescription urging that the claim was perempted under La. R.S. 9:5628. The Mudds responded with a petition for declaratory judgment, seeking to declare that statute unconstitutional. In March 2000, she filed a separate petition for damages against LifeShare.
In October 2000, the Louisiana Supreme Court rendered Williams v. Jackson Parish Hosp., 00-3170 (La.10/16/01), 798 So.2d 921, holding that R.S. 9:5628 is unconstitutional as applied to defective blood claims arising before 1982, and that the one-year prescriptive period of La. C.C. art. 3492 applies. Jurisprudence under Art. 3492 includes a "discovery rule," whereby prescription begins to run only when the plaintiff has actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Campo v. Correa, 01-2707 (La.6/21/02), 828 So.2d 502.
In July 2002, Schumpert filed a supplemental exception of prescription. This alleged that Mrs. Mudd's internist, the late Dr. Samuel Lieber, told her in May 1990 that she had Hepatitis C. In support, Schumpert attached a portion of her deposition in which she admitted going to Dr. Lieber for chronic fatigue, which as early as 1983 he ascribed to "possible Hepatitis." She also agreed that in May 1990, Dr. Lieber told her she had Hepatitis C, likely contracted from blood products. Schumpert also attached a portion of Dr. Lieber's deposition, in which he referred to his office records of May 1990. These showed that he gave her a Hepatitis viral antigen and antibody test on May 8; he received test results positive for Hepatitis C on May 16 and called her to report this on May 18. Schumpert argued that this notice constituted discovery of the disease and its cause.
LifeShare filed an exception of prescription raising the same issues as Schumpert and attaching the same deposition extracts. Both exceptions were consolidated for a hearing in August 2002.
At the hearing, the Mudds called her current physician, Dr. Thomas Allen, a local gastroenterologist. He testified that medical science developed a test ("ELISA") to detect Hepatitis C about 1990, but this could not confirm the diagnosis. A confirming test ("RIBA") became available in 1992. However, the modern test ("PCR," which he referred to as the gold standard) became available only in 1994. He testified that based on Dr. Lieber's office records, Dr. Lieber gave Mrs. Mudd an ELISA, but never a RIBA or PCR, or treated her for Hepatitis C; her condition *914 was not confirmed until he (Dr. Allen) administered a PCR and a liver biopsy in October 1998. The Mudds also offered the deposition of another gastroenterologist, Dr. David Dies, who corroborated these points.
The Mudds argued that until she received Dr. Allen's confirmed diagnosis, she could not know that she really had Hepatitis C; her various symptoms could have resulted from estrogen treatment, which she was receiving from Dr. Lieber. She further argued after allegedly diagnosing a serious disease in 1990, Dr. Lieber made no effort to treat it. She also submitted that Dr. Lieber's records were too confusing to show that he had actually advised her that she had the disease.
The defendants argued that Dr. Lieber's records speak for themselves. They urged that a definitive diagnosis is not needed to start prescription. Foraker v. Board of Supervisors, 31,740 (La.App. 2 Cir. 4/1/99), 734 So.2d 63, writ denied, 99-1268 (La.6/18/99), 745 So.2d 607. Schumpert finally contended that the majority's opinion in Williams v. Jackson Parish Hosp., supra, was in error, and that the court should follow the analysis of the three dissenting justices.
In oral reasons, the district court noted that Dr. Lieber's records were full of "modifications" and that he did not give Mrs. Mudd enough information to excite her suspicion as to diagnosis and cause. Specifically, Dr. Lieber did not consider the condition serious enough to warrant further tests or treatment, so he did not put her on notice. By contrast, Dr. Allen made it clear to Mrs. Mudd in late 1998 that she had Hepatitis C and probably contracted it from the blood transfusions in 1980. Finally, the court noted that it had no authority to disregard the majority ruling in Williams v. Jackson Parish Hosp., supra. The court found that the Mudds' petition for an MRP came within one year of discovery and was timely. The court denied both exceptions, and these writs followed.

Applicable Law
A tort claim arising out of defective blood transfusions that occurred prior to 1982 is considered a strict liability claim and is subject to the one-year prescriptive period of La. C.C. art. 3492. Williams v. Jackson Parish Hosp., supra. However, prescription begins to run only when a plaintiff obtains actual or constructive knowledge of facts indicating to a reasonable person that he or she is the victim of a tort. Campo v. Correa, supra. The prescriptive period begins to run even if the plaintiff does not have actual knowledge of facts that would entitle him to bring a suit as long as there is constructive knowledge of those facts. Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry, and entails notice or knowledge of everything to which reasonable inquiry might lead. Id. A plaintiff's mere apprehension that something may be wrong is not sufficient to start the running of prescription unless she knew or should have known through the exercise of reasonable diligence that her problem may have been caused by acts of malpractice. Id. Even if a malpractice plaintiff is aware that an undesirable condition has developed after the medical treatment, prescription will not run as long as it was reasonable for her not to recognize that the condition might be related to the treatment. Id. The ultimate issue is the reasonableness of the plaintiff's action or inaction, in light of her education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct. Id.; Adams v. Louisiana Medical Mut. Ins. Co., 33,030 (La.App. 2 Cir. 4/7/00), 756 *915 So.2d 708, writ denied, 00-1322 (La.6/30/00), 766 So.2d 540.

Discussion: Application of Discovery Rule
Schumpert contends that under a plain reading of Mrs. Mudd and Dr. Lieber's depositions, he advised her in May 1990 that she had Hepatitis C and contracted it from blood transfusions. Schumpert urges that this is actual knowledge and sufficient to start prescription. Foraker v. Board of Supervisors, supra. LifeShare raises the same argument, but adds that the Louisiana Fifth Circuit has rejected the argument that Hepatitis C cannot be properly diagnosed until confirmed by a specialist. Turnage v. Columbia Lakeside Hosp., 98-1263 (La.App. 5 Cir. 3/30/99), 731 So.2d 919, writ denied, 99-1229 (La.6/18/99), 745 So.2d 26.
On close examination, Dr. Lieber's testimony and office records are inconclusive as to what he actually advised Mrs. Mudd in May 1990. His May 7 office note mentioned that she had "old hepatitis" and ordered "hepatitis viral antigen and antibody tests for A, B and C." The next note, dated May 13, states that he had received those tests, "showing she had B hepatitis years ago with positive anti-HBC, we await hepatitis C study," and a handwritten plus sign appears in the margin next to this. Dr. Lieber explained in deposition that this indicated a positive test result, but that it was a typo: the "small `c' relates to Hepatitis B." He added that this would confuse anyone, even himself. The next note, dated May 18, says Mrs. Mudd had "evidence of both hepatitis B and C in past years." In short, Dr. Lieber's office records from May 1990 do not clearly show that he diagnosed Hepatitis C at that time, or communicated this to Mrs. Mudd.
Mrs. Mudd testified that in May 1990, she had no symptoms other than fatigue, from which she had been suffering for at least 10 years. She acknowledged Dr. Lieber's office notes, but said he thought her liver trouble was related to estrogen treatment she had been receiving. She recalled Dr. Lieber telling her in 1994 "maybe" she had Hepatitis C from blood transfusions. She also testified that Dr. Lieber did not actually diagnose Hepatitis C until June 1998, after she had been to Dr. Allen. However, in response to leading questions she agreed several times that she knew she had the disease in 1990 and that it was the result of her 1980 blood transfusions.
The ultimate issue is the reasonableness of Mrs. Mudd's inaction. Campo v. Correa, supra; Cole v. Celotex Corp., 620 So.2d 1154 (La.1993). Mrs. Mudd described a series of ailments, chronic fatigue and attempted treatments. Although she answered leading questions in a manner to suggest that Dr. Lieber told her in 1990 that she had Hepatitis C as a result of transfusions, elsewhere she indicated the diagnosis was more tentative, as in the September 1994 office visit. Dr. Allen confirmed that her elevated liver enzymes in the early 1990s could have resulted from her estrogen therapy. Notably, Dr. Lieber never ordered any treatment for Hepatitis C, a course of action completely inconsistent with an actual diagnosis of a serious condition. On this record, the district court was not plainly wrong to find that Mrs. Mudd did not have actual or constructive knowledge of her condition or its cause in May 1990. The record clearly shows that she received actual knowledge of these matters in October 1998 from Dr. Allen. Her petition for an MRP, filed in June 1999, was therefore timely.
Both defendants rely on Foraker v. Board of Supervisors, supra, and LifeShare cites Turnage v. Columbia Lakeside *916 Hosp., supra, as mandating a finding of constructive knowledge. We note that the doctor's records in Foraker were much more conclusive than in the instant case, showing that the plaintiff was diagnosed with Hepatitis C over a year before requesting an MRP; additionally, the plaintiff's sister, who had also been diagnosed with the disease, corroborated that she informed the plaintiff about the condition and its cause over a year earlier. In Turnage the discussion is minimal but shows that the plaintiff received a diagnosis of Hepatitis (not specifically Hepatitis C), together with information that it came from blood transfusions, more than a year before she filed suit. The instant case is more akin to Bourque v. Louisiana Health Syst. Corp., 03-56 (La.App. 3 Cir. 4/30/03), 845 So.2d 584, in which the recipient of a 1975 blood transfusion was diagnosed in 1976 with Hepatitis B and told by physicians that it resulted from the transfusion, but no other diagnosis made and no treatment ordered. The plaintiff did not receive a confirmed diagnosis of Hepatitis C until April 1998, and filed suit in March 1999. The Third Circuit reversed a judgment sustaining the defendant's exception of prescription.
For the reasons expressed, we detect no manifest error in the district court's finding that this claim is not prescribed.

Other Arguments
By its first assignment of error LifeShare urges that because the Mudds' request for MRP against Schumpert was not timely, it did not interrupt prescription as to LifeShare. La. R.S. 40:1299.47 A(2)(a); Masters v. Fields, 27,924 (La.App. 2 Cir. 1/24/96), 666 So.2d 1333, rev'd on other grounds, 96-0486 (La.1/31/97), 686 So.2d 850. As the claim against Schumpert was in fact timely, this interrupted prescription with respect to LifeShare. La. C.C. arts. 1799, 3503. This argument lacks merit.
By its second assignment of error Schumpert urges that the supreme court's opinion in Williams v. Jackson Parish Hosp., supra, is wrong and "any application of the standards set forth therein by the trial judge is an error because Williams should be overruled." However, the appellate courts of the state are bound to follow the decisions of the state supreme court. Pelican State Asso., Inc. v. Winder, 253 La. 697, 219 So.2d 500 (1969); Lucky v. Fricks, 511 So.2d 1315 (La.App. 2 Cir.), writ denied, 514 So.2d 455 (La.1987). Schumpert's invitation to disregard the supreme court's latest expression of the law of prescription lacks merit.

Conclusion
For the reasons expressed, we recall the writ previously granted and affirm the district court's judgment denying the defendants' exceptions of prescription. The case is remanded for further proceedings. Costs are assessed equally against Schumpert and LifeShare.
WRIT RECALLED; JUDGMENT AFFIRMED; CASE REMANDED.