759 So.2d 45 (2000)
Daniel J. BOUTTE and his wife, Sandra Boutte, Individually, and on Behalf of their minor child, Sandi Boutte, and his sons, Daniel J. Boutte, Jr. and Ernest Mamolo, III
v.
JEFFERSON PARISH HOSPITAL SERVICE DISTRICT NO. 1, d/b/a West Jefferson General Hospital, Charity Hospital in New Orleans, Jefferson Parish Hospital Service District No. 2, d/b/a East Jefferson General Hospital, Hotel Dieu Hospital and Daughters of Charity of St. Vincent De Paul, Inc., d/b/a Daughters of Charity of St. Vincent De Paul, St. Louis, U.S.A.
No. 99-C-2402.
Supreme Court of Louisiana.
April 11, 2000.
*46 Frederick William Bradley, Oreck, Bradley, Crighton, Adams & Chase, New Orleans; Counsel for Applicant.
Chester Arthur Fleming, III, Fleming & Rosamond, Metairie; Richard P. Ieyoub, Attorney General, Jude David Bourque, Baton Rouge, Antonio Edward Papale, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metairie; Michael Charles Luquet, Baton Rouge, Peter J. Butler, Breazeale, Sachse & Wilson, New Orleans; Steve M. Sikich, Pitre, Halley & Sikich, Lake Charles; Anthony S. Cox, Caron, McCormick, Constants & Wilson; John Elliott Baker, Baton Rouge, Counsel for Respondent.
Erick Yukihiko Miyagi, Baton Rouge, Thomas MacDougall Womack, Counsel for Our Lady of the Lake Hospital Inc. (Amicus Curiae).
Peter T. Dazzio, Chris James LeBlanc, Baton Rouge, Counsel for Louisiana Hospital Association (Amicus Curiae).
Cornell Rushing Flournoy, John Layne Hammons, Shreveport, Counsel for John Hammons (Amicus Curiae).
MARCUS, Justice.[*]
Daniel Boutte received blood transfusions at Hotel Dieu Hospital (hereinafter "Hotel Dieu") in December 1981 and January 1982. Fourteen years later Boutte was diagnosed with hepatitis C virus. He was told that his disease might have been caused by blood received during transfusions performed on him while a patient at Hotel Dieu and other hospitals, if the blood used was defective (contaminated with the hepatitis virus). Within a year of diagnosis, Boutte filed suit in July, 1996[1] against several hospitals where he received blood *47 transfusions over the years, including Hotel Dieu.[2]
Hotel Dieu filed an exception of prescription, relying on the periods of limitation set forth in La. R.S. 9:5628. This statute precludes recovery for medical malpractice claims filed more than three years after the alleged wrongful act, omission, or neglect. Plaintiffs responded, arguing that this special statute of limitations applicable to medical malpractice cases does not apply to strict liability claims and that their claims were timely filed within one year of discovery and diagnosis of hepatitis C pursuant to the general prescription articles for delictual actions and the judicially created exception, contra non valentum.[3]
The trial judge granted defendant's exception of prescription and dismissed plaintiffs' suit. The court of appeal reversed, agreeing with plaintiffs that strict liability claims are not governed by La. R.S. 9:5628. It remanded the case for a trial on the merits.[4] Upon application of defendant, we granted certiorari to consider the correctness of that decision.[5]
The issue before us for review is whether the plaintiffs' strict liability claims arising out of blood transfusions performed at Hotel Dieu in 1981 and 1982 are governed by La. R.S. 9:5628.
The Medical Malpractice Act (hereinafter sometimes "MMA") was enacted by the legislature in 1975.[6] It dictates the terms and conditions under which patients can pursue actions against private health care providers covered under the Act and limits the recovery available for covered claims. In 1976 the definition of malpractice in the MMA was revised to expressly cover the responsibility of health care providers arising from the use of certain types of defective things in the course of patient care. At the time of the transfusions in question, the Medical Malpractice Act defined malpractice as follows:
"Malpractice" means any unintentional tort or any breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient, and also includes all legal responsibility of a health care provider arising from defects in blood... implanted in ... a patient. [Emphasis added].[7]
In our view, the Act at all relevant times encompassed all legal theories of liability asserted against a private hospital for damage arising from defects in blood provided to patients by transfusion, including claims based on strict liability.[8] Accordingly, we conclude that at least as of *48 the time of the transfusions at issue here, plaintiffs' claims constituted medical malpractice claims covered by the Act. Indeed, plaintiffs have conceded in oral argument that their strict liability claims are malpractice claims governed by the provisions within the Medical Malpractice Act itself. But having done so, they nevertheless argue that the provisions of La. R.S. 9:5628 do not govern the periods of limitation for this particular species of medical malpractice claim founded on a theory of strict liability. We do not agree.
Rules governing the applicable periods of limitation for actions resulting in injury to persons or property are usually found in the Civil Code or ancillaries to the Civil Code, rather than within the statutes providing the substantive circumstances and conditions under which recovery may be granted. These rules govern the categories of actions addressed, even though the substantive law describing and defining particular claims for relief may be altered from time to time by legislative action or judicial interpretation. It is axiomatic that a determination of the proper prescriptive period to be applied in a case depends on the nature of the cause of action asserted. Roger v. Dufrene, 613 So.2d 947 (La.1993); Starns v. Emmons, 538 So.2d 275 (La. 1989). As previously noted, plaintiffs' claim is in the nature of a medical malpractice claim, regardless of the underlying legal theory (strict liability) used to support the claim. Thus, we look to the particular prescriptive period governing that type of action.[9]
At all times relevant to this litigation La. R.S. 9:5628 provided:
§ 5628 Actions for medical malpractice
No action for damages for injury or death against any ... hospital ... whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought unless filed within one year from the date of the alleged act, omission, or neglect, or within one year from the date of the discovery of the alleged act, omission or neglect; provided, however, that even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission or neglect.[10] [Emphasis added].
While the word "malpractice" is not found within the text of the Act, we have held on numerous occasions that La. R.S. 9:5628 is a special provision designed to cover medical malpractice claims. Crier v. Whitecloud, 496 So.2d 305 (La.1986); Hebert v. Doctors Mem'l Hosp., 486 So.2d 717 (La.1986). It was enacted in 1975 in the same session of the legislature that enacted the Medical Malpractice Act. The preamble to La. R.S. 9:5628 as originally enacted stipulates that it was added to provide for a maximum prescriptive period and abandonment with respect to "medical *49 malpractice claims."[11] The statute has been amended from time to time to expand the class of defendants and claimants governed by the limitation periods. Preambles to amendments have continued to recite that the prescriptive period is relative to actions for "medical malpractice."[12] It is clear that La R.S. 9:5628 was intended by the legislature to govern "medical malpractice claims." The title and preamble to La. R.S. 9:5628 may properly be consulted to confirm that intent. Matter of American Waste & Pollution Control Co., 93-3163 (La.9/15/94), 642 So.2d 1258; Green v. Louisiana Underwriters Ins. Co., 571 So.2d 610 (La.1990).
La. R.S. 9:5628 is a prescription statute with one qualification, that is, that the contra non valentum type of exception to prescription embodied in the discovery rule is expressly made inapplicable after three years from the alleged injury causing act, omission or neglect. Crier v. Whitecloud, 496 So.2d 305 (La.1986); Hebert v. Doctors Mem'l Hosp., 486 So.2d 717 (La. 1986). If plaintiffs' claims are governed by La. R.S. 9:5628, they are time barred because filed more than three years after the transfusions at issue.
It is undisputed that the gravamen of plaintiffs' claims is that Daniel Boutte suffered injury as a consequence of implantation of defective blood during transfusions performed while he was a patient at Hotel Dieu. Those transfusions were performed after the 1976 amendments to the Medical Malpractice Act. It is also clear that Hotel Dieu is a private hospital covered under the Act.[13] As a consequence, plaintiffs must bring their claims, if at all, as medical malpractice claims. They do not have the option of disregarding the Act where it appears beneficial to do so. They are likewise bound by the special periods of limitation that govern the particular type of cause of action they have asserted. Since plaintiffs' claims were filed more than three years after the transfusions at issue, they are prescribed. La. R.S. 9:5628.
Plaintiffs argue that our decisions in Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878 (La.1985) and Branch v. Willis-Knighton Med. Ctr., 92-3086 (La.4/28/94), 636 So.2d 211, dictate a contrary result. That is not the case. In Faucheaux, we held that once a plaintiff acquires a vested strict liability action arising out of receipt of allegedly tainted blood, he cannot be deprived of that right by subsequently enacted legislation. Our decision in Faucheaux did not address the issues presented here, i.e., whether the plaintiffs' strict liability claims are covered by the Medical Malpractice Act and governed by La. R.S. 9:5628.
In Branch we considered a case arising out of a blood transfusion administered prior to the effective date of the 1976 amendments to the Medical Malpractice Act which revised the definition of malpractice. At the time the transfusion at issue in Branch was performed, the Medical Malpractice Act contained no reference to defective blood implanted in a patient.[14] We sought to determine whether a strict liability action arising out of conduct not expressly covered by the then applicable definition of malpractice would be governed by the periods of limitation in La. R.S. 9:5628. Construing the statutes with reference to each other, we found no indication that the legislature intended in *50 1975 to embrace strict liability claims within the statutory framework enacted to govern malpractice cases.
However, La. R.S. 40:1299.41(A)(8) was amended by Acts 1976, No. 183, § 1, effective October 1976 to specifically provide that malpractice:
includes all legal responsibility of a ... hospital arising from defects in blood... implanted in ... a patient.
Our decision in Branch dealing with a transfusion falling under the pre-1976 version of the MMA does not dictate the result in this case. Most courts of appeal facing the issue presented in this case have reached the same conclusion.[15]See e.g., Neal v. Pendleton Mem'l. Methodist Hosp., 99-0040 (La.App. 4th Cir. 4/21/99), 733 So.2d 698, writ den., 99-1870 (La.10/8/99), 751 So.2d 221; Walker v. Bossier Med. Ctr., 30-715 (La.App. 2nd Cir. 6/24/98), 714 So.2d 895, writ den., 98-2029 (La.11/13/99), 730 So.2d 450; DeBlanc v. Touro Infirmary, 96-1965 (La.App. 4th Cir. 12/27/96), 686 So.2d 1015; Sonnier v. Opelousas Gen. Hosp., 95-1560 (La.App. 3rd Cir.5/8/96), 688 So.2d 1040.[16]
In sum, we conclude that plaintiffs' claims are medical malpractice claims covered under the Medical Malpractice Act. As such they are governed by the special prescription rules provided in La. R.S. 9:5628 and are prescribed. The court of appeal erred in holding otherwise. We must reverse.
In addition to the arguments addressed hereinabove, plaintiffs have also advanced the argument that La. R.S. 9:5628 and/or the Medical Malpractice Act are unconstitutional. They argue that if differing definitions of "medical malpractice" in the public and private acts result in the application of different rules for prescription of claims depending on whether the transfusions at issue were performed in public or private hospitals, such disparate treatment of similarly situated patients is constitutionally infirm. Plaintiffs raised this argument (and others regarding the unconstitutionality of the statutes) in their memorandum in opposition to the exception of prescription filed in the trial court and again in assignments of error in the court of appeal. However, plaintiffs did not plead the unconstitutionality of the statutes with specificity in any pleading in the trial court. Nor did they serve the Attorney General as required by law so that the State's interests could be represented. The court of appeal did not address the claims of unconstitutionality because they were not properly raised in the trial court and therefore were not appropriate for appellate review. We decline to address these claims for the same reasons. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291; Bellard v. Louisiana Correctional & Indus. School, 95-0157 (La.10/16/95), 661 So.2d 430; Vallo v. Gayle Oil Co., Inc., 94-1238 (La.11/30/94), 646 So.2d 859; Taylor v. *51 Giddens, 618 So.2d 834 (La.1993); Johnson v. Welsh, 334 So.2d 395 (La.1976); Becker v. Allstate Ins. Co., 307 So.2d 101 (La.1975); Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971). See also, Smith v. Willard, 97-1772 (La.App. 4th Cir. 3/11/98), 711 So.2d 723.
Nevertheless, La.Code Civ. P. art. 934 provides that when the grounds for an objection pleaded by a peremptory exception may be removed by amendment of the petition, a judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the plaintiff fails to comply with such an order to amend, the action shall be dismissed. We express no opinion on the merits of plaintiffs' claims of unconstitutionality. However, in view of the possibility that the resolution of these claims might have a bearing on prescription, we deem it appropriate to allow plaintiffs time to amend their petition in the trial court to plead with particularity the claims of unconstitutionality originally raised in their memorandum filed in the trial court. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291; Summerell v. Phillips, 258 La. 587, 247 So.2d 542 (1971).

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and set aside. The judgement of the trial court sustaining the exception of prescription filed by Hotel Dieu Hospital is reinstated; however, the case is remanded to the trial court to allow plaintiffs fifteen days from the finality of this judgment to amend their petition to plead the unconstitutionality of the statutes at issue. In default of such amendment, plaintiffs' suit is dismissed. If the plaintiffs elect to amend, the district court shall conduct further proceedings according to law and consistent with the views herein expressed. Costs in this court are assessed against the plaintiffs and the assessment of other costs is to await the final outcome of the suit.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, § 3.
[1] Boutte's wife and children joined in the suit as additional plaintiffs.
[2] Only the claims against Hotel Dieu are before the court in this application.
[3] This judicially created exception is based on the civilian doctrine of contra non valentum agere nulla currit praescriptio (prescription does not run against a party unable to act). Crier v. Whitecloud, 496 So.2d 305 (La.1986).
[4] 99-270 (La.App. 5th Cir. 7/27/99), 738 So.2d 1188.
[5] 99-2402 (La.11/19/99), 750 So.2d 208.
[6] La. Acts 1975, No. 817. A separate statute was enacted in 1976 to govern malpractice liability for state services. La. Acts 1976, No. 66. Claims covered by that statute are not before us in this case.
[7] La. Acts 1976, No. 183.
[8] In Sewell v. Doctors Hosp., 600 So.2d 577 (La.1992), we implicitly so held. There, we faced the issue of whether a strict liability claim arising out of an accident caused by a defective hospital bed was covered under the Medical Malpractice Act. We concluded that the legislature did intend to cover strict liability claims against hospitals and health care providers in the Act where such claims arise out of the specifically enumerated potentially defective things mentioned in the statute as amended in 1976. In Sewell, we found that the defective bed at issue was not among the types of defective things mentioned in the statute and concluded that such claims were not covered under the Act. But, as we noted in Sewell, one of the specifically enumerated potentially defective things that is expressly addressed in the statute is blood.
[9] Plaintiffs contend that it is improper to consult the definition of medical malpractice in the Medical Malpractice Act in resolving the issue presented in this case. They suggest that it would be equally appropriate to look to the definition of malpractice in the Act governing state liability (which does not refer to blood products) in order to determine whether La. R.S. 9:5628 applies. The fundamental flaw in plaintiffs' argument is that it misconceives the proper starting point for analysis of the issue presented in the case. We are not called upon to "interpret" the language of La. R.S. 9:5628 in a vacuum, seeking any enlightening definition of malpractice. Instead, we are called upon to determine whether La. R.S. 9:5628 applies to the particular type of cause of action these plaintiffs pursue. In this case plaintiffs have pleaded an action against a private hospital covered by the Medical Malpractice Act. To determine whether a claim against a private hospital is in the nature of a malpractice claim, we must turn to the definition of malpractice in that Act. Once a determination is made that the nature of the cause of action is one for medical malpractice, we look to La. R.S. 9:5628 for guidance on prescription because it is the special statute of limitations for that type of action.
[10] La. Acts 1976, No. 214.
[11] La. Acts 1975, No. 808.
[12] La. Acts 1976, No. 214; La. Acts 1990, No. 501.
[13] The record reflects that a certificate of enrollment was filed evidencing coverage of Hotel Dieu as a private hospital under the Medical Malpractice Act.
[14] At all times relevant to the single transfusion at issue in Branch, La. Acts 1975, No. 817 provided:

(8) "Malpractice" means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.
[15] The Fifth Circuit Court of Appeal came to the same conclusion in Landry v. Alton Ochsner Found. Med. Ctr., 95-883 (La.App. 5th Cir. 2/27/96), 671 So.2d 24. No mention was made of that decision when the court rendered its opinion in this case.
[16] Plaintiffs also argue that the passage of blood shield statutes in 1981 and 1982 (La. R.S. 9:2797; La. Civ.Code art. 2322.1) and an expanded malpractice prescription statute in 1999 (La. R.S. 9:5628.1) support their argument that strict liability claims were not governed by La. R.S. 9:5628 at the time of Boutte's transfusions. They argue that if strict liability blood claims had been covered, these statutes would have been unnecessary. We do not agree. The blood shield laws granted complete immunity to health care providers from strict liability claims for transfusions after their passage, increasing the meaningful protection already afforded by the three year limitation period for post-1976 strict liability claims covered under the MMA. Similarly, the 1999 passage of La. R.S. 9:5628.1 expands the application of the three year limitation period. It is not an indication that La. R.S. 9:5628 did not already apply to strict liability claims for post-1976 blood transfusions covered by the MMA. Moreover, the statute specifically states that it does not affect pre-1999 claims. It did not repeal La. R.S. 9:5628 in whole or in part.