801 So.2d 1182 (2001)
STATE of Louisiana in the Interest of J. W.
No. 2001-CA-0500.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 2001.
*1183 Philip Bangle, Michael Spencer, Tulane Law School, OIDP (Juvenile Division), and Warren P. McKenna, III, Victor Papai, Orleans Indigent Defender Program, New Orleans, LA, Counsel for Appellant.
Sherry Watters, Department of Social Services, Office of Community Services, and Deidre K. Peterson, Law Offices of Deidre K. Peterson, New Orleans, LA, Counsel for Appellee.
Court composed of Chief Judge WILLIAM H. BYRNES, III, Judge STEVEN R. PLOTKIN and Judge MIRIAM G. WALTZER.
WILLIAM H. BYRNES III, Chief Judge.
The Mother and Father of J.W. appeal the February 1, 2001 judgment of the trial *1184 court terminating their parental rights to J.W.
The judgment of the trial court[1] states that it was:
"[B]ased on the fact that the sibling, J.W.1, who was in the custody of her parent(s) and died as a result of injuries that were inflicted to her body. Said injuries having been determined not to have been caused accidentally. The facts show that the parents failed to adequately feed the child and to seek appropriate medical attention."

I. APPELLANTS' FIRST ASSIGNMENT OF ERROR
In their first assignment of error the appellants complain that:
By terminating the parental rights of the Mother and Father with only a mere finding of "negligence", the trial court Judgment did not comport with the spirit and the language of the Statute by failing to make mandated findings as a prerequisite to terminating parental rights under Louisiana Children's Code art. 1015(3).
Proof of any one of the types of "misconduct" listed under La.Ch.C. art 1015(3) is grounds for termination of parental rights. The trial judge found more than mere negligence and the record supports that finding. A court's findings as to whether parental rights should be terminated are reviewed according to the manifest error/clearly wrong standard. State ex rel. S.M.W., XXXX-XXXX (La.2/21/01), 781 So.2d 1223; State in Interest of BJ, 95-1915, p. 15-16 (La.App. 1 Cir. 4/4/96), 672 So.2d 342.
La.Ch.C. art. 1015(3) refers to, "[m]isconduct toward this child or any other child of the parent or any other child in his household ..."
Based on the medical neglect of J.W.'s sibling and her subsequent death on June 25, 2000, attributable to injuries inflicted upon her which were found not to be accidental, all of which is amply supported by evidence in the record, we cannot say that the judgment of the trial court was either manifestly erroneous or clearly wrong. It is significant that the appellants do not challenge the factual inferences drawn by the trial court. The appellants challenge only the conclusion of the trial court that those finding were legally sufficient to justify the termination of their parental rights.
The record establishes that the abuse of JW's deceased sibling began no later than April of 2000 when hospital records show that she had bruising on her abdomen. Those records show that her appellant-Mother told the doctors that the child sustained the bruises in day care. However, in her court testimony, the mother admitted that the child was not in day care. The record reveals a pattern of assisting in the ongoing abuse of the child at worst, or, at best, a pattern of ignoring the obvious abuse. The child was denied consistent and appropriate medical treatment. The Mother admitted that the household was dirty and chaotic with eighteen people in two bedrooms. The coroner's report shows that the immediate cause of the child's death was two skull fractures inconsistent with a fall. One of the fractures was depressed, indicating the use of an extreme amount of force. Based on the time of death as may be inferred from the evidence, we can further infer that the child's Father was the child's *1185 immediate caretaker at the time of injury and death.
It is, therefore, also reasonable to infer from the record that the mother was protecting the child's abuser, most likely the child's Father. All members of the household denied responsibility and refused to reveal the identity of the abuser(s).
Under these circumstances, the trial judge was reasonable in deciding that JW would not be safe in the care of either of her parents. See State in the Interest of C.J.K., 2000-2504 (La.11/28/00), 774 So.2d 107, where the Supreme court held that:
We conclude that the lower court erred in failing to recognize that passive abuse or neglect by a parent can inflict just as, if not more so, "gravely disabling" injury as physical abuse.
There is no merit in this assignment of error.

II. APPELLANTS' SECOND ASSIGNMENT OF ERROR
As their second assignment of error the appellants complained that the trial court erred by allowing only a limited and not a blanket Fifth Amendment protection on the Father's testimony.
The trial judge ordered the appellants to submit a memorandum in support of their position that the Father was entitled to invoke a blanket Fifth Amendment privilege. The trial judge cautioned that: "In the event Mr. McKenna [appellants' counsel] does not submit memorandum, the Court will consider the objection to [the father] testifying withdrawn." The appellants failed to heed the trial judge's admonition concerning the consequences of failing to file a memorandum. By failing to file the memorandum as ordered by the trial judge, the appellants waived the issue.
Nevertheless, a review of the transcript reveals that the trial judge bent over backwards to protect the father's Fifth Amendment rights. The Father was allowed to declare which questions he would answer and which he would not. Where there was any genuine question of the father's Fifth Amendment rights, the trial judge resolved all doubts liberally in favor of the Father. The Father's Fifth Amendment rights were adequately protected.
Moreover, the Fifth Amendment privilege may only be asserted with respect to particular questions. State v. Edwards, 419 So.2d 881, 892 (La.1982). It is well settled that whereas an accused may assert the privilege as an excuse for refusing to take the stand, a witness may assert the privilege only with respect to particular questions. State v. Coleman, 406 So.2d 563, 566 (La.1981). Hence, it will be constitutionally required in virtually every case that the witness invoke the Fifth Amendment protection question by question. Id. The instant case is not a criminal prosecution of the father. The facts of the instant case do not constitute a rare exception calling for a blanket claim of Fifth Amendment privilege. Such an exception is generally applied only when the witness is a co-defendant under criminal prosecution, the charges arise from the same incident as gave rise to the charges against the defendant, and the defendant seeks to question the witness about the incident. State v. Jordan, 97-1756, p. 10 (La.App. 4 Cir. 9/16/98), 719 So.2d 556, 564. Nor do the facts of this case fit any of the other even more narrow exceptions qualifying for an assertion of a blanket privilege described in State v. Jordan, supra.
Any one of the foregoing reasons provides a sufficient basis for rejecting this assignment of error.

*1186 III. APPELLANTS THIRD ASSIGNMENT OF ERROR
In their third assignment of error the appellants complain the La .Ch.C. art. 1015(3) is unconstitutional on its face in that it allows for the termination of parental rights without a showing that the child subject to the termination is or has been in danger to the extent required for termination.
The appellants failed to raise the issue of the constitutionality of La.Ch.C. art. 1015(3) in the trial court. It will not be considered for the first time by this court on appeal. Boutte v. Jefferson Parish Hospital Service District No. 1, 99-2402 (La.4/11/00), 759 So.2d 45.

IV. APPELLANTS' FOURTH ASSIGNMENT OF ERROR
In their fourth assignment of error the appellants complain that the "clear and convincing evidence" standard of La.Ch.C. art. 1035 is an unconstitutionally low standard of proof.
The appellants argue that where the termination of parental rights is concerned, it is the parents' liberty interest at stake. But it is not that simple. There is the competing interest of the child to consider:
More than simply protecting parental rights, our judicial system is required to protect the children's rights to thrive and survive.... While the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to insure that parental rights are not thoroughly severed, those interests must ultimately yield to the paramount best interest of the children.
State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445.
In Santosky v. Kramer, 455 U.S. 745, 769-770, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599 (1982), the United States Supreme Court held that states do not have to apply the "beyond a reasonable doubt" standard in termination of parental rights proceedings. The Court explained that:
Like civil commitment hearings, termination proceedings often require the factfinder to evaluate medical and psychiatric testimony, and to decide issues difficult to prove to a level of absolute certainty, such as lack of parental motive, absence of affection between parent and child, and failure of parental foresight and progress. [Citation omitted.] The substantive standards vary from State to State. Although Congress found "beyond a reasonable doubt" standard proper in one type of parental termination case, another legislative body might well conclude that a reasonable-doubt standard would effect an unreasonable barrier to state efforts to free permanently neglected children for adoption.
A majority of the States have concluded that a "clear and convincing evidence" standard of proof strikes a fair balance between the rights of the natural parents and the State's legitimate concerns.... We hold that such a standard adequately conveys to the factfinder the level of subjective certainty about his factual conclusions necessary to satisfy due process. We further hold that determination of the precise burden equal to or greater than that standard is a matter of state law properly left to state legislatures and state courts. [Citation omitted.] [Emphasis added.]
Therefore, the Louisiana Legislature did not exceed its constitutional authority when it adopted a "clear and convincing" standard of proof in La.Ch.C. art. 1035.
There is no merit in appellants' fourth assignment of error.

*1187 DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] There is a discrepancy between the language of the judgment found in the record and the judgment attached to the appellants brief. However, the result would be the same under either version. The version quoted in this opinion is that found in the record.