# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 09-889

**STATE OF LOUISIANA,**
**IN THE INTEREST OF M. R.**

**VERSUS**

**S. F. H. - NATURAL MOTHER**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, JUV NO. 18182
HONORABLE GUY E. BRADBERRY, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**MARC T. AMY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy and Michael G. Sullivan, Judges.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED.**

Nicholas Pizzolatto, Jr.
State of Louisiana
Department of Social Services
Post Office Box 1867
Lake Charles, LA   70602-1867
(337) 475-3037
COUNSEL FOR APPELLEE:
        State of Louisiana, Department of Social Services

Edward M. Nichols, Jr.
827 Pujo Street
Lake Charles,   LA 70601
(337) 439-8587
COUNSEL FOR APPELLEE:
        M. R.

D. Bruce Jones
700 First Avenue
Sulphur, LA   70663
(337) 528-3314
COUNSEL FOR APPELLANT:
        S. F. H.

AMY, Judge.

M.R. was placed into state custody on February 9, 2004. The State filed a petition to terminate the biological mother's rights, and the petition was denied. After efforts at reunification, the State again brought a petition to terminate the biological mother's rights, and the trial court terminated the biological mother's rights. The mother appeals. Finding the State did not meet its burden of proof of clear and convincing evidence for the termination of parental rights, we reverse in part, affirm in part, and remand.

## Factual and Procedural History

S.F.H.[1] is the biological mother of the minor, M.R. On February 9, 2004, the Office of Community Services (OCS) received a report that S.F.H was allegedly neglecting M.R. based on alcohol or substance abuse dependency and unspecified physical abuse. The report indicates that the allegations came from concerned neighbors who witnessed erratic and abusive behavior by S.F.H. and D.B.R.[2] OCS investigated the allegations, interviewing several neighbors and S.F.H., and subsequently sought an Instanter Order that M.R. be removed from custody of the parents pending further investigation. It was at this time, that OCS learned that S.F.H's. parental rights to her seven-year-old daughter, B.F., had been terminated in Texas following allegations that S.F.H. was neglecting B.F., leaving her without adequate supervision and severely in need of medical care. The Instanter Order was granted on February 16, 2004. On February 20, 2004, OCS filed a petition requesting M.R. be adjudicated a child in need of care. OCS had cause to suspect M.R. was in

---

[1] Pursuant to the Uniform Rules-Courts of Appeal, Rules 5-1 and 5-2, the initials of the parties will be used to protect and maintain the privacy of the minor child involved in this proceeding.

[2] D.B.R. is the biological father of M.R.; parental rights were terminated on December 20, 2006, and are not at issue in this appeal.

need of care after S.F.H. stated that D.B.R. had been picked up for several outstanding warrants in Mississippi and Arkansas and, after talking to authorities in Texas, receiving information that S.F.H. was wanted in Texas in conjunction with the allegations of child abuse. Judgment was rendered adjudicating M.R. a child in need of care on March 5, 2004.

Termination of S.F.H.'s parental rights was denied on December 20, 2006, and OCS was ordered to work with S.F.H. for six months to reunify. However, on January 7, 2008, the State filed a Second Petition for Certification for Adoption and Termination of Parental Rights. The trial court issued a judgment terminating S.F.H.'s parental rights on November 30, 2008.

S.F.H. now appeals asserting that the trial court "erred in finding by clear and convincing evidence that attempts to rehabilitate the parent have been unsuccessful" and "erred in finding it was within the Child's best interest to terminate Mom's parental rights." S.F.H. also assigns as error, that La.Ch.Code art. 1015(3)(k) is unconstitutional as interpreted by the trial court.

**Discussion**

The termination of parental rights is a two-pronged inquiry. First, the State must prove by clear and convincing evidence the existence of, at least, one ground for termination under La.Ch.Code art. 1015. La.Ch.Code art.1035(A); *Santosky v Kramer*, 455 U.S. 745, 102 S.Ct. 1388 (1982). Only after the ground for termination is found, the trial court must determine whether the termination is within the best interest of the child. La.Ch.Code art. 1039. On review of a termination of parental rights, an appellate court cannot set aside a trial court's finding of fact in the absence

2

of manifest error or unless the findings are clearly wrong. *State in the Interest of K.G. & T.G.*, 02-2886, 02-2892 (La. 3/18/03), 841 So.2d 759.

*Burden of Proof*

S.F.H. asserts that the State failed to prove a ground for termination by clear and convincing evidence, specifically, the ground provided in La.Ch.Code art. 1015(3)(k), which reads:

> The parent's parental rights to one or more of the child's siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful.

The trial court, in its written reasons for judgment, found the State met its burden of proving one ground for termination by entering into evidence a Texas judgment terminating S.F.H.'s parental rights to B.F., the sibling of M.R. Further, the trial court dismissed S.F.H.'s argument that progression in her case plan demonstrates that she is reformed. The trial court reasoned:

> At trial, evidence presented was that the mother still had not addressed the abuse of [B.F.] and the termination of her rights to that child, even though this case has been going on for 56 months. In fact, for the first time in 56 months, the mother said she did <u>not</u> have to address the prior termination because "I was told the charges were dropped and my rights were terminated for abandonment."

Here, the State bears the burden of proving each element of a ground for termination. For termination under La.Ch.Code art. 1015(3)(k), the State must prove: (1) that S.F.H.'s parental rights to B.F. were terminated due to neglect or abuse and (2) that prior attempts to rehabilitate S.F.H. have been unsuccessful. *See* La.Ch.Code art. 1035(A); *State ex rel. L.B. v. G.B.B.,* 07-1715 (La. 12/4/02), 831 So.2d 918.

S.F.H.'s parental rights to B.F. were terminated in 2003 by a Texas order of termination. A review of the record reveals that B.F. went into custody with the State of Texas after allegations that B.F. was a victim of abuse and medical neglect. The

order of termination was introduced into the record and revealed the grounds for termination of S.F.H.'s parental rights as to B.F. as follows:

> 6.2.1 knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child;

> 6.2.2 engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child;

> 6.2.4 constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months; and (1) The Department or authorized agency has made reasonable efforts to return the child to the mother; (2) the mother has not regularly visited or maintained significant contact with the child; and (3) the mother has demonstrated an inability to provide the child with a safe environment;

S.F.H. testified that at the time B.F. was taken into custody, she was homeless and unable to support herself or her child.

It is clear from the record that S.F.H.'s parental rights were terminated due to "neglect or abuse" and, thus, the first requirement of La.Ch.Code art. 1015(3)(k) is satisfied.

The second inquiry is whether the State established the prior attempts to rehabilitate S.F.H. were unsuccessful. OCS issued its initial case plan involving S.F.H. on August 24, 2004. The initial case plan goal was reunification finding that S.F.H. had made "significant progress towards completing her plan" in successfully completing parenting classes, submitting to psychological evaluations, initiating her substance abuse assessment, submitting to unexpected drug tests which all tested negative for drugs, and promptly attending every visit with M.R. The case plan stated that S.F.H. was working part-time while looking for more permanent employment and

4

was living with her boyfriend, T.H., in a mobile home found to be above minimal standards. S.F.H. and T.H. both provided the agency information in order to conduct a criminal background investigation which revealed that T.H. had been previously charged with contributing to the deliquency of minors and one charge of indecent behavior with a juvenile. OCS was concerned with T.H.'s criminal background and informed him that he must undergo a sexual offender risk level assessment before it could consider returning M.R. to their home. The case plan also stated that S.F.H., in order to complete the case plan, needed to successfully complete substance abuse assessment and acquire any recommended treatment, obtain verifiable employment, and verifiable housing.

In an April 6, 2005 judgment, case plans for February and March were accepted by the trial court. Both of these plans maintained the goal of reunification and stated that S.F.H. had made significant progress. OCS stated that S.F.H., in order to complete the case plan, needed to attend family assessments with a psychologist, Dr. Post, attend group meetings about domestic violence, and continue to submit to random drug screens. The family assessments were to be attended by T.H. also, in addition to T.H. completing the previous sexual offender assessment.

In July 2006, the State filed a petition for certification of adoption and the termination of parental rights. The State alleged that although S.F.H. had almost completely worked her case, "there [was] no reasonable expectation of significant improvement" because S.F.H. had previously had her parental rights terminated in Texas, T.H. only completed one of the two sex offender assessments, and the medical experts involved opined that parental rights should be terminated.

5

In December 2006, a trial was held. At trial Dr. Jerry Whiteman, a psychologist who evaulated S.F.H., testified as a expert witness. When asked about S.F.H.'s and T.H.'s ability to parent, Dr. Whiteman testified:

> I would - - I have reservations, and I would think that they would need some parent education, some supervision, especially of their potential for anti-social behaviors or drug use, [S.F.H.] especially, but I think that both, as I understood, they were gainfully employed at the time of my assessment. They were attempting to have a responsible lifestyle, and I believe with - - you know, with caution and help, they could proceed with being parents.

Dr. Jodie Guth, a clinical psychologist, also testified as an expert at trial. Dr. Guth advised against reunification, stating:

> A. At the time of the first evaluation in March of [2005], [S.F.H.] and [T.H.] had been together only for a short period and they were not married, and because of the history of previous problems in relationships for both of them, there was a concern about the stability of their relationship.
>
> Q. And I believe you indicated that reunification was not advised at that time?
>
> A. It was not.

Dr. Guth testified about other reasons she did not recommend reunification, stating:

> A. The issue of the previous termination in the State of Texas was one that could not be minimized, in my opinion. The child was five years old. [S.F.H.] did not appear to have a strong attachment with the child. The information that was available to us suggested that she had a very passive attitude toward the incident, that it was the fault of others and not herself, that the child was harmed and so that her account of the incident as well as the records provided to us related to the previous termination was a significant factor but not the only factor.
>
> Q. Okay. What were the other factors?
>
> A. I was looking for a sense that through completing the case plan, she had recognized the error of her ways with [B.R.] and had acknowledged that there was abuse and that she had learned to better regulate her emotions and her behavior so that another

6

child would not be harmed, and I was not clear on whether that degree of maturity had occurred.

When asked if S.F.H.'s commitment to the case plan indicated that she was maturing, Dr. Guth responded "Yes. It gives the appearance of some progress." The trial court questioned Dr. Guth, asking:

> THE COURT:
> Is it possible in this situation we have at hand for a reformation sufficient enough to warrant reunification?
>
> [Dr. Guth]:
> Assuming that medical interventions would be in place and supervision would be available and in-home monitoring of parenting would be in place, okay.

After hearing testimony from the experts, the case worker, and the parties, the trial court dismissed the State's petition for certification of adoption and the termination of parental rights for lack of sufficient evidence that S.F.H. was not making steps toward rehabilitation.

A review hearing was held six months after trial on August 15, 2007, and again, the State expressed concerns over S.F.H.'s previous termination of parental rights in Texas. Dr. Guth, who had testified at the previous trial, refused to continue with the case because she disagreed with the court's goal of reunification. S.F.H. began seeing another psychologist, Dr. Charlotte Butler. The State requested ninety days to implement Dr. Butler's recommended plan for gradual reunification. That request was granted and primary care was given to S.F.H.

On December18, 2007, another review was held. The State requested to change the plan to termination after receiving Ms. Butler's testimony. The exchange was as follows:

> Q. I also asked you whether or not you could tell the court whether you would feel comfortable telling it that you would return - - if

7

M.R. were returned to the foster parent full time 100 percent and the State was out of it. You gave me an answer to that question. And what was your answer?

A.  I would feel comfortable with that.

MR. PIZZOLATTO:  And, Your Honor, based on what she said, the State cannot in good conscious not change the goal back to adoption and ask - - and file another petition to terminate. Because almost after four years, we still do not have a professional that would recommend that [S.F.H.] and her husband take the child.

MS. BUTLER:  I'd like to clarify that if I could, Judge.

THE COURT:  Please.

MS. BUTLER:  I don't feel that I can make the recommendation, partly because I did not do a custody evaluation. That was not the role I was brought into. And I made it clear to all parties that I was not going to be giving an opinion on placement.
The question that Mr. Pizzolatto asked me had to do with my feelings about that. It's not a professional opinion that I feel ethically I can give because I did not do the work that would be required to come to court and make a professional recommendation about that.

The trial court granted the State's request to change the case plan to termination and set the matter for trial. Because the goal was changed to termination, primary care of M.R. was given to the foster mother, and S.F.H. was allowed only monthly visitation.

The second petition for termination and adoption was filed in January of 2008. In that petition, the State alleged that termination was proper under La.Ch.Code art. 1015(3)(k) because S.F.H.'s parental rights were terminated in Texas and S.F.H. "did

not work a case plan for the return of her child, and did not attend the trial to determine whether her parental rights should be terminated."

The final trial was held on May 21, 2008. The trial court took the matter under advisement, and on December 5, 2008, signed a written judgment immediately and irrevocably terminating S.F.H.'s parental rights to M.R. The trial court found:

> Therefore, since the parental rights of S.F.H. was terminated to a sibling of M.R., the State of Louisiana Department of Social Services has met its burden of proving **at least one ground for termination of parental rights as outlined in the Louisiana Children's Code. In the present case, it was pursuant to Children's Code Article 1015(3)(k).**
>
> . . . .
>
> The mother argues she has reformed, worked the majority of her case plan and under 1015(3)(k), this child should be returned.
>
> This court is called upon to decide if the mother's reformation and efforts to complete a case plan should place the rights and desires of a parent over those of a child. This court finds that jurisprudence demands a child's best interest is controlling.
>
> . . . .
>
> A very disturbing trend has developed in this case, and that is the emphasis has been placed too heavily on the mother, [S.F.H.]. That emphasis is misplaced. The overriding consideration is what is in the best interest of [M.R.]. No other person's feelings, thoughts or lifestyle controls this situation other than those of [M.R.]

On review, we may not set aside any of the trial court's factual findings unless those findings are manifestly erroneous, in other words, clearly wrong. *State v. F.Y.* 05-920 (La.App. 3 Cir. 3/1 06), 924 So.2d 1164, *writ denied*, 06-932 (La. 5/26/06), 930 So.2d 35. The present case is dealing with whether the State carried its burden of proof for a second petition for adoption and termination of S.F.H.'s parental rights. The first petition for termination and adoption was denied on the ground that the State

9

failed to carry its burden of proof regarding efforts at S.F.H.'s rehabilitation. In the first judgment, the trial court stated:

> [M]uch of the evidence adduced today and the testimony adduced and the pleadings reflecting the same suggest that mom's rights should be terminated as a result of a termination of a prior child in Texas. It apparently has been the Court's impression that's the single most important motivating factor in determining the case at bar.

> The Court wants to share language in the [Louisiana Children's Code] comments of [article 1015] that seem to share the Court's concerns, and I'm going to quote:

> "This ground" - - in this case [La.Ch.Code art. 1015(3)(k)]. "This ground is worrisome because conceivably in a particular case," such as the case at bar, "a parent may have reformed, especially if a substantial period of time has elapsed since the prior judgment. Similarly, despite earlier failures, the family dynamics may have changed to the extent that children presently in the home are no longer in an environment producing a high risk of danger. The purpose of authorizing court intervention to consider termination of parental rights is to ensure that the pattern of prior abuse has indeed been broken," my own emphasis added. "And if the Court also finds in [La.Ch.Code art. 1037(A)] [sic] that would permit the Court to find the best interest of the child will not be served by termination of parental rights," which I think is clear in this case.

> It talks about other notes and the type of other evidence that's needed and specifically attempts at rehabilitation have been unsuccessful. While the Court recognizes that the State's experts suggest that mom fails to recognize or realize the failures historically, her failures as a parent historically in this case, I don't think sufficient evidence was presented to suggest that she has not made considerable steps in rehabilitation.

> . . . .

> The Court at this time feels as though that with the mother's apparent willingness to continue to work her case plan, and has demonstrated the same, this Court finds at this time that it would be in the best interest of this child that the State's termination request for the mother be denied and that this Court's going to order that there be a plan of reunification, and that plan is to be no less than six months and that the State is to prepare a plan to be submitted to this Court[.]

> . . . .

10

> Mom and dad, more specifically mom, congratulations, but the job's not over. I do feel in my heart that you're going to be in the right direction, and I applaud you for that. Continue your work, and this child, in a matter of a few months, should be where it belongs. That's with you.

A review of the record reveals that the State offered no further evidence regarding S.F.H.'s rehabilitation between the first trial and the present case. In fact, the record reveals that S.F.H. and T.H. completed those items OCS requested. There is no indication that OCS required S.F.H. to attend counseling to specifically address the previous termination of her parental rights in Texas. It appears that S.F.H. completed all other counseling requested. No case plan or testimony from case workers in Texas was admitted. The trial court, in its written reasons for terminating S.F.H.'s parental rights, discussed that S.F.H.'s rehabilitation was not the issue before the court, instead, the relevant inquiry was related to M.R.'s best interest. There is no doubt that M.R.'s best interests are relevant in this case, however, a justifiable ground for termination must be proven first. Our supreme court has explained this in *G.B.B.*, 831 So.2d at 926 (citations omitted), stating:

> [P]ermanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable statutory grounds exist and are proved by clear and convincing evidence.

The record before us does not provide support in finding that the State met its burden by clear and convincing evidence. The State offered no additional negative evidence regarding S.F.H.'s rehabilitation between the first termination, which was denied for lack of evidence, and the present termination. In fact, much of the evidence revealed that S.F.H. was making significant progress in her rehabilitation. Termination may be appropriate in this situation after looking at M.R.'s best interest,

11

but the State must prove a statutory ground for termination first, and it cannot be said that this was done here.

Accordingly, we find that it is appropriate to reverse the trial court's judgment terminating parental rights and declaring M.R. eligible for adoption. We remand this case for further proceedings insofar as the judgment maintains the State's custody of M.R.

We do not reach S.F.H.'s alternative assignment of error regarding the constitutionality of La.Ch.Code art. 1015(3)(k). In addition to our ruling above, we note that this issue was not raised below. *See Boutte v. Jefferson Parish Hosp. Serv. Dist. No. 1*, 99-2402 (La. 4/11/00), 759 So.2d 45; *State in the Interest of J.W.*, 01-500 (La.App. 1 Cir. 11/14/01), 801 So.2d 1182.

## DECREE

For the foregoing reasons, we reverse that portion of the trial court's judgment terminating S.F.H.'s parental rights of M.R. and declaring him eligible for adoption. That portion of the judgment maintaining the State's custody of the child is affirmed. We remand for further proceedings.

**REVERSED IN PART; AFFIRMED IN PART; REMANDED.**

12