# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT


## 11-252


## STATE OF LOUISIANA IN THE INTEREST
## OF B.B, B.K.G., & B.G.


**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. JC-2008-0671
HONORABLE MARILYN C. CASTLE, DISTRICT JUDGE
**\*\*\*\*\*\*\*\*\*\***


## SYLVIA R. COOKS
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.


**AFFIRMED**.

**Annette Roach**
**724 Moss Street**
**Lake Charles, LA 70601**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT(MOTHER)/APPELLANT:**
**R.A.**


**William T. Babin**
**405 West Convent Street**
**Lafayette, LA 70501**
**(337) 232-7747**
**COUNSEL FOR APPELLEE:**
**Louisiana Department of Social Services**

**COOKS, Judge.**

This is an appeal from a final judgment of the district court that terminated the parental rights of the appellant mother, R.A., to her children, B.B. (born in 1999), B.K.G. (born in 2006), and B.G. (born in 2007). The judgment was rendered after a trial on the merits on the Petition for Termination of Parental Rights filed by the Louisiana Department of Social Services (hereafter the State). The petition alleged, as grounds for termination, the mother's noncompliance with her case plan.

The State became involved when it learned that the youngest child, B.G., was taken to the hospital on June 5, 2008, where he was diagnosed with a skull fracture. Neither R.A. nor the child's live-in father were able to provide a reasonable explanation of how the injury occurred. R.A.'s children were removed from her custody and taken into the State's custody on June 6, 2008. On June 11, 2008, R.A. stipulated to the continued custody of the children with the State. The children were adjudicated children in need of care on June 24, 2008, without opposition from R.A.

At the trial on the petition for termination, the caseworker testified after the removal of the children from R.A.'s custody, a case plan was formulated which required R.A. to obtain steady employment, obtain treatment for substance abuse, complete the Family Violence Intervention Program (FVIP), and pay child support. The caseworker stated R.A. obtained only sporadic employment and had not held any job for more than a few months. The caseworker also testified that R.A. had not completed substance abuse treatment, because she refused to attend substance abuse education classes. The caseworker also stated R.A. had never attended FVIP meetings. Lastly, she testified R.A. has never paid child support.

The State also alleged in its Petition for Termination of Parental Rights that R.A.'s pattern of repeated incarceration had rendered her unable to care for the needs

of her children for significant periods of time. The record reflected R.A. was arrested and incarcerated in excess of ten (10) times since the children had been taken into State custody. At the time of the hearing, R.A. was on probation for the felony offense of second degree battery.

R.A. acknowledged at the hearing she had been "arrested" numerous times, "like four or five times." She confirmed she was on probation until 2015 for aggravated battery for assaulting someone with a knife. She also admitted her children had been previously removed from her custody because one of the children was born drug exposed, although she claimed she was taking Lortab for back pain. Regarding steady employment, R.A. testified she had only worked once, for approximately three months, and claimed she had no other employment because she was on a "high dose of medication" and was "filing for disability and stuff." She also confirmed she had never paid child support, had not completed substance abuse education classes, and had not attended FVIP meetings.

At the conclusion of the hearing, the trial court continued the hearing, opting not to make a decision regarding the mother's parental rights until after it was able to review a current evaluation by Dr. Ed Bergeron, a psychologist who evaluated R.A. The trial court also ordered the mother to be randomly drug screened and for Dr. Bergeron to perform another psychological evaluation of R.A.

Only six days after the first hearing concluded, R.A. was arrested on October 27, 2010, for a drug offense and prescription fraud. She was incarcerated for approximately three weeks.

At the second hearing, the caseworker testified R.A. was randomly drug screened approximately one month after the first hearing, and she tested positive for opiates. The caseworker stated that because of the positive drug screen, R.A., at a

minimum, would have to receive intensive outpatient treatment. The caseworker also testified that due to R.A.'s refusal to attend or cancellation of appointments, FVIP declined to be a provider of services for R.A.

Dr. Bergeron testified he went to the jail on November 4, 2010 to see R.A. for the court-ordered psychological evaluation, but R.A. refused to be evaluated, even though Dr. Bergeron warned that her refusal could lead to her losing parental rights. He testified he scheduled a later date for an evaluation, but R.A. did not show up, nor did she reschedule for a later appointment even though her release from jail occurred weeks before the second hearing. Dr. Bergeron believed R.A.'s refusal to be evaluated indicated problems with her motivation and believed her outlook and prognosis were poor.

R.A. testified at the hearing and disputed Dr. Bergeron's account of their meeting at the jail, stating she believed it was alright with him if they met after she was released. She also stated Dr. Bergeron did not tell her she could lose her parental rights if she did not submit to the evaluation. R.A. also asserted the positive drug screen was due to her taking of Lortab from an old prescription she had from a prior surgery.

At the conclusion of the hearing, the trial court terminated R.A.'s parental rights. The trial court gave the following oral reasons for her ruling:

> I heard all the testimony back in October. [R.A.], at that time, told me that she was very close to completing her case plan, that she was going to get it all done. A few days later, she gets arrested. She's in jail.

> Dr. Bergeron goes there to assist her in completing one of the biggest milestones that I asked be done, and she refuses. And she refuses because her priority was, I want to get out of jail. And then she gets out of jail, and she's got a positive drug test.

> So it tells me that she has not got [sic] the priorities to care for these children. She has not stopped abusing drugs. She can make up a

-3-

story about having a prescription. I see no prescription and no evidence from her doctor that she had a valid prescription. And it's the exact same thing that those criminal charges that she's facing now are stemming from.

So this Court finds, by clear and convincing evidence, that, now, having given it another chance and not taken that chance, that, despite all of the efforts of the Department and all the services provided to [R.A.], there is no reasonable expectation of significant improvement in her condition or conduct in the near future.

And, considering the fact that these children have been in care for two-and-a-half years, this Court finds that they are – need a safe, stable, and permanent home.

[R.A.]'s behavior continues to expose her to possible incarceration, as well as indicates that she is using drugs for which she does not have a valid prescription. And the Court is going to order termination of her parental rights.

R.A. appeals the trial court's judgment, asserting it erred in terminating her parental rights for substantial non-compliance when she had completed several components of the case plan and where the State failed to prove by clear and convincing evidence that there was no reasonable expectation for further improvement in her condition. R.A. also asserts the termination was not in the best interests of the children.

## ANALYSIS

In *State ex rel. K.G.*, 02-2886, pp. 4-5 (La. 3/18/03), 841 So.2d 759, 762-63, the Louisiana Supreme Court discussed the standard of review in termination of parental rights cases:

> An appellate court reviews a trial court's findings as to whether parental rights should be terminated according to the manifest error standard. *State ex rel. J.W.*, 01-500 (La.App. 4 Cir. 11/14/01), 801 So.2d 1182. In two recent cases, we discussed the concerns regarding the involuntary termination of parental rights by the state, as follows:
>
> > In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great

-4-

deference and vigilant protection under the law, and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship. However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent.

The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven.

Title X of the Children's Code governs the involuntary termination of parental rights. La. Child. Code art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need establish only one ground, La. Child. Code art. 1015, but the judge must also find that the termination is in the best interest of the child. La. Child. Code. art. 1039. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. La. Child. Code art. 1035(A). (Cites omitted.)

*State in the Interest of J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 810-811; see also *State ex rel. C.J.K.*, 00-2375 (La.11/28/00), 774 So.2d 107.

In balancing the interests of the parent versus the child, the State's burden in a termination proceeding is first to establish by clear and convincing evidence one of the statutory grounds for involuntary termination of a parent's rights and then to establish by clear and convincing evidence that termination of parental rights is in the child's best interest. *Id.* The trier of fact does not reach the best interest issue unless and until the State establishes a ground for termination. *State in the Interest of M.R. v. S.F.H.*, 09-889 (La.App. 3 Cir. 12/9/09), 25 So.3d 1021, *cert. denied*, 09-2812 (La.1/14/10), 24 So.3d 878. Additionally, we review the trial court's findings of fact under a manifest error/clearly wrong standard. *Id.*

In her first assignment of error, R.A. complains the trial court erred in finding she failed to substantially comply with her case plan and that there was no reasonable expectation of significant improvement in her condition or conduct in the future. We disagree. The evidence presented at both hearings proved by clear and convincing evidence that R.A. failed to substantially comply with her case plan.

Louisiana Children's Code Article 1015(5) provides that failure to substantially comply with a case plan is a ground for termination of parental rights. Louisiana Children's Code Article 1036(C) provides that lack of parental compliance with a case plan may be evidenced by *one or more* of the following:

> (1) The parent's failure to attend court-approved scheduled visitations with the child.
>
> (2) The parent's failure to communicate with the child.
>
> (3) The parent's failure to keep the Department apprised of the parent's whereabouts and significant changes affecting the parent's ability to comply with the case plan for services.
>
> (4) The parent's failure to contribute to the costs of the child's foster care, if ordered to do so by the court when approving the case plan.
>
> (5) The parent's repeated failure to comply with the required program of treatment and rehabilitation services provided in the case plan.

(6) The parent's lack of substantial improvement in redressing the problems preventing reunification.

(7) The persistence of conditions that led to removal or similar potentially harmful conditions.

Contrary to R.A.'s argument, we find the State proved by clear and convincing evidence that R.A. violated several of the above factors.

The record established R.A., who has a significant history of abusing drugs, refused to attend substance abuse classes. Moreover, she tested positive for opiates in the interim between the first and second hearings, even though her drug use was a key factor in the petition to terminate her parental rights. R.A. also did not attend the FVIP program despite it being a requirement of her case plan. Thus, it is clear that R.A. repeatedly failed to comply with the required program of treatment and rehabilitation services provided in the case plan.

R.A. admitted she has failed to retain steady employment as required by her case plan and justified this failure by stating she could not seek employment because she was on a "high dose of medication" and was "filing for disability and stuff." Due at least partly to her lack of employment, R.A. did not pay any child support even though it was required of her under the case plan.

R.A., against the explicit orders of the trial court, continued to live with and/or have substantial contact with the man whom she was living with at the time B.G. sustained a skull fracture. The caseworkers testified R.A. admitted to this but stated she would deny it at the hearing "for purposes of this cases." R.A. also has an established pattern of criminal acts that have led to numerous periods of incarceration. She has been arrested more than ten (10) times since her children were placed in the State's custody, and by R.A.'s own testimony she has been convicted of four or five crimes. In the short period between the first and second hearing, R.A.

was arrested for a drug offense and prescription fraud. She is also currently on probation until 2015 for second degree battery. Thus, considering her extensive criminal history, any new charges could result in a significant period of incarceration. Such behavior clearly demonstrates non-compliance with the case plan, namely a lack of substantial improvement in redressing the problems preventing reunification, and the persistence of conditions that led to removal or similar potentially harmful conditions.

Along with proving there was not substantial compliance with the case plan, La.Ch.Code art. 1015(5) also requires the State to prove there is no reasonable expectation of significant improvement in the parent's conduct in the near future. We find the State met this burden.

Louisiana Children's Code Article 1036(D) provides certain factors may evidence a lack of any reasonable expectation of improvement. Among them are a pattern of repeated incarceration and substance abuse problems, which serve to render the parent incapable of exercising parental responsibilities. Clearly, the trial court did not manifestly err in finding R.A. exhibited factors which establish she had no reasonable expectation of improvement in the near future.

In her second assignment of error, R.A. contends the trial court erred in ruling that termination of parental rights was in the best interest of the children. Louisiana Children's Code Article 1037(B) provides that termination of parental rights should only be granted if it is in the best interests of the children. The record supports the trial court's finding that termination of R.A.'s parental rights in this case was in the best interests of the children.

The caseworker testified that B.G. and B.K.G. have remained together in the same foster care placement for two (2) years. She believed the children were thriving

and had bonded with their foster parent. Moreover, she testified the children's foster parent wanted to adopt them.

Regarding B.B., the caseworker stated the State still held out hope to reunite B.B. with his father. If that did not occur, B.B. was currently placed in the home of a foster parent who was willing to maintain B.B. in that home. The caseworker testified B.B. was doing well in this placement and had bonded with the foster parent.

Dr. Bergeron testified it would be detrimental to the children for them to remain in foster care indefinitely, and it could cause them psychological damage. He believed it was in the best interests of the children that they be freed for adoption.

Balancing R.A.'s rights against those of her children and considering the fundamental purpose, focus, and primary concern of termination proceedings as explained by the supreme court, we conclude that the trial court did not commit manifest error in concluding that the best interests of the children require termination of R.A.'s parental rights.

## DECREE

For the foregoing reasons, we affirm the trial court judgment in all respects. Costs of these proceedings are assessed to R.A.

**AFFIRMED.**